[No. 20359.   Department One.   February 28, 1927.]

HERZL CONGREGATION, *Appellant,* v. ISAAC ROBINSON *et al., Respondents.*[1]

[1] DEAD BODIES (1, 2)—BURIAL—REMOVAL.  A permission to inter a body in a cemetery necessarily carries the right to disinter it and bury it elsewhere.

[2] SAME (1, 2)—PROPERTY RIGHTS.  The common law that there is no property right in a dead body does not prevail here, especially in view of Rem. Comp. Stat. § 6042.

[3] SAME (1, 2)—BURIAL—REMOVAL—RIGHTS OF CHURCH. The rights of the family being superior to church or ecclesiastical rules, a disinterment desired by the family will not be enjoined because contrary to the rules of the church.

Appeal from a judgment of the superior court for King county, Frater, J., entered July 30, 1926, upon findings in favor of the defendants, in an action for an injunction, tried to the court.  Affirmed.

*Edward Von Tobel* and *Frank A. Steele,* for appellant.

*Schwellenbach, Merrick & Macfarlane,* for respondents.

FRENCH, J.—One Rubin Robinson died in the Veteran's Hospital at Boise, Idaho, on July 3, 1926.  His parents, Isaac Robinson and Sarah Robinson, resided

[1]Reported in 253 Pac. 654.

in Centralia, Washington, and are Jewish people. The father, Isaac Robinson, was with his son at the time of his death, or shortly thereafter, and telegraphed one A. Robinson, an uncle of the deceased and brother of Isaac Robinson, who resided in Seattle, advising him of the death, and asking him to arrange for the burial of his son.

These arrangements were made through a nephew with the proper authorities of the Herzl Congregation, the appellant. A price of one hundred dollars was fixed by the authorities for the privilege of interment in their cemetery and this money was properly paid.

Isaac Robinson arrived in Seattle from Boise on July 5, and on the train following him, and at about 7:15 in the evening, the body arrived and the parents and other members of the family, together with officers and members of the Herzl Congregation proceeded directly to the cemetery, where the body was prepared in accordance with the Jewish rites and placed in the grave.

Two days after, application was made by the parents to remove the body from the cemetery of the Herzl Congregation to the cemetery of the Bikur Cholum Congregation, another Jewish cemetery where certain relatives of the deceased were buried, and a proper permit was given by the board of health. The Herzl Congregation, the appellant, refused to permit the disinterment of the body, and upon respondents attempting to proceed with their apparent plan to remove the body, the appellant brought suit for the purpose of securing a permanent injunction against respondents.

Trial was had in the lower court and the action dismissed.

Counsel for appellant has presented several questions for the consideration of the court, claiming first,

that, as respondents acquired no title to any piece or parcel of ground in the Herzl cemetery, but only a license or privilege for the burial of Rubin Robinson in Jewish consecrated ground, it therefore follows that any entry on the part of respondents for disinterment would constitute trespass which a court of equity would enjoin. Appellant further urges that, at common law, there could be no property in a dead human body, and after burial it becomes a part and parcel of the ground to which it is committed, and that therefore there was no right in the respondents to remove the body after it had once been properly buried.

It is further claimed that it is the law and custom of the Orthodox Jewish Church that a body once interred cannot be removed; that the opening of a grave is a desecration and offense in the eyes of the church, and that such being the law of the Orthodox Jewish Church it is controlling on the courts.

[1] We think there is no merit in the first contention. We think it necessarily follows that, having secured and paid for permission for the interment of the body that necessarily carries with it the right to have the body disinterred and buried elsewhere, providing the respondents still retain control over it.

[2] On the second question raised by appellant, namely, that there can be no property in a human body, it is true that the old English law did not recognize the body of the dead as property. But the American courts have generally held, where this question has been brought before them, that there is a right of custody over, and interest in, a dead body, and the disposal of the body. This has been made a matter of statute in many states, and indeed our own statute, Rem. Comp. Stat., § 6042 [P. C. § 1758] seems to recognize that this right exists. *Bogert v. Indianapolis,* 13 Ind. 134; *Pierce v. Swan Point Cemetery,* 10 R. I. 239.

The subject of property in human bodies is discussed, authorities cited, and rules laid down in 4 Alb. L. J. 56; 6 Alb. L. J. 151, 154; *Ritter v. Couch,* 71 W. Va. 221, 76 S. E. 428, 42 L. R. A., (N. S.) 1217.

As has been said by many courts, there is a *quasi* property right in a dead human body inherent in the immediate relatives of the deceased. *Boyce v. Kalbaugh,* 47 Md. 334; *Tracy v. Bittle,* 213 Mo. 302, 112 S. W. 45.

[3] On the third question raised by appellant, namely, that the rules and regulations of the Orthodox Jewish Church must prevail, we are concerned immediately with the proposition that we have no ecclesiastical courts in this state, and that none of the elements of such courts are contained in the structure of our body politic. True it is that, under the old English law, the ecclesiastical courts and the church claimed and were given exclusive jurisdiction of bodies of deceased persons and also their estates, but, there being no such courts in this country, that power must necessarily now be in the equity courts.

In the instant case, there is a serious conflict in the testimony as to whether or not the rules and regulations of the Orthodox Jewish Church would permit the disinterment of a body, particularly in view of the fact that the purpose thereof was to bury it in another Jewish cemetery where an uncle and aunt of the deceased had previously been buried. But we prefer to decide this case on the question of the rights of the parents, brothers and immediate family of the deceased.

The most complete treatise on this subject is contained in the report of the Honorable Samuel B. Ruggles, Referee appointed by the supreme court of the state of New York, and contained in 4 Bradford, 503. After reviewing all of the authorities the referee's re-

port, which was adopted by the court, concludes as follows:

"1.   That neither the corpse, nor its burial, is legally subject, in any way, to ecclesiastical cognizance, nor to sacerdotal power of any kind.

"2.   That the right to bury a corpse and to preserve its remains, is a legal right, which the courts will recognize and protect.

"3.   That such right, in the absence of testamentary disposition, belongs exclusively to the next of kin.

"4.   That the right to protect the remains includes the right to preserve them by separate burial, to select the place of sepulture, and to change it at pleasure.

"5.   That if the place of burial be taken for public use, the next of kin may claim to be indemnified for the expense of removing and suitably re-interring their remains."

These rules have been cited with approval by many of the courts of the United States, and it seems to us are a proper and adequate expression of the law. Applying them to the instant case the judgment of the lower court was right, and it is therefore affirmed.

MACKINTOSH, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.