[No. 24204.   Department One.   February 27, 1933.]

HOME UNDERTAKING COMPANY, *Respondent,* v. LOUIS W. JOLIFF, *as Administrator, Appellant.*[1]

*J. W. Robinson,* for appellant.
*Allen, Froude, Hilen & Askren,* for respondent.

HOLCOMB, J.—John C. Joliff died in a Seattle hospital on December 14, 1930.  On the same day, his attending physician, Dr. Stone, who had been acquainted with the deceased for ten or twelve years, called respondent, requesting that it make arrangements for

[1]Reported in 19 P. (2d) 654.

the funeral. Two or three years prior to this request, the deceased had favorably mentioned to Dr. Stone that the Home Undertaking Company as an institution would be a good place for a laboring man for such service, on account of its reasonableness. He had also, immediately prior to being taken to the hospital, expressed to an intimate friend of many years his desire that his body be taken to respondent's place of business for cremation. Neither his attending physician nor this intimate friend had ever heard him mention that he had a divorced wife and two sons living in Olympia, or had any knowledge of them.

Notices of the death of decedent and later of his intended funeral were published by the undertaking company in the three principal Seattle papers for five days, and the funeral was had on December 19, 1930. After the date of the funeral, one of the sons, by accident, noticed an advertisement in one of the papers, consulted with a lady friend of his mother's, and then discovered that the deceased was his father, but that the funeral had already been held.

Upon the petition of Dr. Stone, a creditor, a special administrator was appointed in the person of C. L. Haggard, president of the undertaking company which had conducted the funeral services and cremated the body of the deceased. Upon the discovery of the death of their father, one of the sons went to Seattle and petitioned for his own appointment as general administrator of the estate, which was duly granted. A claim for two hundred fifty dollars for funeral expenses was presented by the undertaking company to the general administrator, rejected by him, and this action ensued.

The son testified on the trial of this action that his father was a member of the High Episcopal church, and that he had heard remarks made by him from

which he understood that his father did not believe in cremation.

On appeal from the order allowing the claim for two hundred fifty dollars by the court below, appellant first attacks the validity of the order appointing the special administrator on the ground that the court having charge of probate matters in King county had no jurisdiction to appoint the president of the undertaking company as special administrator, and that all the acts of the special administrator were without jurisdiction and void.

Rem. Rev. Stat., § 1451, authorizes the appointment of a special administrator:

"When by reason of an action concerning the proof of a will, or from any other cause, there shall be a delay in granting letters testamentary or of administration, the judge may, in his discretion, appoint a special administrator (other than one of the parties) to collect and preserve the effects of the deceased; . . ."

*Id.,* § 1453, requires that:

"Such special administrator shall collect all the goods, chattels, and debts of the deceased, and preserve the same for the executor or administrator who shall thereafter be appointed; . . ."

Id., § 1454, prescribes that:

"Upon granting letters testamentary or of administration the power of the special administrator shall cease, and he shall forthwith deliver to the executor or administrator all the goods, chattels, money and effects of the deceased in his hands, . . ."

Rem. Rev. Stat., § 1541, prescribes:

"The debts of the estate shall be paid in the following order:

"(1) Funeral expenses in such amount as the court shall order."

Appellant contends that no one had authority to take possession of the body of the deceased except

the coroner, under the provisions of Rem. Rev. Stat., § 6040 *et seq.*, which, among other things, provides for the establishment of morgues in certain class counties by the county commissioners, and that the jurisdiction of the bodies of all deceased persons not claimed by friends or relatives, or who come to their death by reason of violence or unnatural causes, etc., is vested in the county coroner, with a provision in *id.*, § 6046, that the right to possess bodies of deceased persons not claimed by friends or relatives is vested in the county coroner.

Still another statutory provision (Rem. Rev. Stat., § 2490) prescribes that the remains of any dead body shall be decently buried, or cremated, within a reasonable time after death.

It is evident that respondent was not guilty of officious interference in taking possession of the dead body of the deceased as it did. In *Golden Gate Undertaking Co. v. Taylor*, 168 Cal. 94, 141 Pac. 922, Ann. Cas. 1915D, 742, 52 L. R. A. (N. S.) 1152, the supreme court of California, having before it a provision similar to our statutory provision requiring that funeral expenses shall be first paid, and in view of the fact that such expenses must ordinarily be incurred before the appointment of an executor or administrator, held that such claims do not stand on the same footing as other claims or expenses of the administration, but are enforcible against the estate thereof although not authorized by the executor or administrator; an undertaker being justified in furnishing the necessary services upon the request of anyone so related to the deceased as to exclude the idea of officious interference. See, also, *Cape Girardeau Bell Telephone Co. v. Hamil*, 160 Mo. App. 521, 140 S. W. 951; 11 R. C. L. 223; *Wood v. Butterworth & Sons*, 65 Wash. 344, 118 Pac. 212.

Our statute further directs payment "in such amount as the court shall order"; always assuming that the court will allow only such expenses as are reasonable, all things considered, and in keeping with the station in life of the deceased person. 8 R. C. L. 690.

Cremation is now recognized as one of the suitable methods of disposing of one's own dead body if he desires and is authorized by statute. There was no direct contradiction of the testimony that the deceased desired cremation after death. Neither is there any contradiction of the reasonableness of the items of expense and services of respondent in that connection.

■ Appellant attacks the reasonableness of these services itemized in a bill of particulars, as follows: Services $35; Clothing $25; Casket $125; Press notices $5; Minister $5; Music $5; Flowers $15; Cremation $35.

Three witnesses testified that the sum of $250 was a reasonable sum for such services as were rendered for the deceased and that the casket was cremated with the body. No evidence was introduced on behalf of appellant in any way disputing any of the items or the total.

Appellant relies strongly upon *Herzl Congregation v. Robinson,* 142 Wash. 469, 253 Pac. 654, where we approved of two principles: first, that the right to bury a corpse and to preserve its remains is a legal right which the courts will recognize and protect; and second, that such right, in the absence of testamentary disposition, belongs exclusively to the next of kin.

Respondent apparently used reasonable diligence to notify the next of kin by advertisements in the newspapers. It could not, as appellant argues, have compelled a news item to be published concerning the death of decedent. Had any of the next of kin re-

sponded to the advertisements, then they would have had rights to protect. The cited case does not apply to this case.

After reading the entire record, we can find no warrant for disturbing the judgment of the trial court. In passing, however, we wish to express our disapproval of the apparent minimum charge of two hundred fifty dollars for funeral expenses which seems to prevail in King county, in probate matters. We see no reason why any minimum charge should be fixed, but that such expenses should be obtained as reasonably as possible, especially in these times.

The judgment is affirmed.

BEALS, C. J., PARKER, MITCHELL, and MILLARD, JJ., concur.