[No. 24495. Department One. July 27, 1933.]

CHARLES GUILLIUME *et al., Respondents,* v. LOUISE McCULLOCH, *as Administratrix, Appellant.*[1]

*F. W. Loomis,* for appellant.

*J. E. Stewart,* for respondents.

MITCHELL, J.—This cause was tried on stipulated facts. Those material to a decision on the appeal are about as follows:

Peter Sicourmat died on September 25, 1929, leaving as his only heirs at law a daughter, Mrs. Louise McCulloch, and a son, Andrew Sicourmat. The children seasonably made arrangements with a funeral director

" . . . for the casket and other funeral supplies and equipment and for the burial of the deceased; that subsequently, to-wit: on or about the 26th day of September, 1929, the said undertaker, L. E. Elerding, was advised by the plaintiff Charles Guilliume and by one Mike Rajcich that he, the said Charles Guilliume, was the person who should have been consulted and who should make arrangements for said funeral, and the only one entitled so to do, and severely criticised the said undertaker for having permitted anyone else to

[1]Reported in 24 P. (2d) 93.

make such arrangements; that the said Charles Guilliume ordered a different casket than the one which had been arranged for by the children of the deceased and made different arrangements from those formerly made by the said defendant, her husband and brother, including the hiring of an extra automobile.

"That the said undertaker finally resented the criticism, remarks, manners and insistence of the said Charles Guilliume that he was the person and the only person to be consulted in the premises, and asked the said Charles Guilliume and the said Mike Rajcich who was to pay for the funeral charges of said Peter Sicourmat which was then and there being ordered. Whereupon the said Charles Guilliume replied, 'I am.' The said undertaker next inquired, 'When?' to which the said Charles Guilliume replied, 'When do you want it?' and the undertaker said 'Right now.' Whereupon the said Charles Guilliume took the money out of his pocket and then and there paid said charges in full without any other remark, qualification or condition, and then and there received from said undertaker a receipt, of which the following is a true copy, to-wit:"

[A receipt in full to Charles Guilliume personally for the funeral services.]

"That said Peter Sicourmat, deceased, left a purported will which by its terms devised practically all of his property to the plaintiffs Guilliume and which named the said Rajcich as executor; that the said purported will was presented for probate in the above entitled court and letters testamentary issued thereon unto the said Mike Rajcich on or about the 7th day of October, 1929; that the said Mike Rajcich by virtue of said letters caused notice to creditors to be published in the manner required by law, the first publication having been upon October 12th, 1929; that on or about the 28th day of March, 1930, the said daughter, Louise McCulloch, duly filed in said cause, to-wit: 'In the Matter of the Estate of Peter Sicourmat, Deceased, In the Superior Court of the State of Washington, in and for Grays Harbor County, No. 5743,' her petition to revoke probate of said will; that on or about the

27th day of June, 1930, the Honorable J. M. Phillips, judge of the above entitled court, duly made a judgment in said matter which was duly filed, in which judgment the court recited, among other matters: 'That the said purported will was not the true will of the said Peter Sicourmat, Deceased, and did not embody his true wishes and desires and was procured by undue influence and was further made in consideration of support from the said Guilliumes which had not been furnished.' It was further 'ordered, adjudged and decreed by the court that the probate of the will of Peter Sicourmat, Deceased, be annulled and the said purported will be set aside and that the said Peter Sicourmat is hereby adjudged to have died intestate, and that all proceedings had with reference to the probate of said will be, and are hereby adjudged to be null and void.' ''

After entry of the judgment that the will was procured by undue influence and the order revoking the probate of it, Mrs. McCulloch was appointed and qualified as administratrix of the estate of Peter Sicourmat, deceased. Thereupon, Charles Guilliume and his wife presented a claim against the estate for the amount Charles Guilliume had paid the undertaker. The administratrix rejected the claim. Charles Guilliume and wife sued on the rejected claim, and, in a trial without a jury, procured judgment against the estate. The administratrix has appealed.

■ The right of the next of kin to control and direct the burial of a corpse and arrange for its preservation is not only a natural right, embracing a high order of sentiment, but has become to be well recognized as a legal right. In *Herzl Congregation v. Robinson*, 142 Wash. 469, 253 Pac. 654, we quote from a treatise or referee's report adopted by one of the courts of New York, which report in part was as follows:

"2. That the right to bury a corpse and to preserve its remains, is a legal right, which the courts will recognize and protect.

"3. That such right, in the absence of testamentary disposition, belongs exclusively to the next of kin."

Then followed our comment that

"These rules have been cited with approval by many of the courts of the United States, and it seems to us are a proper and adequate expression of the law."

See, also, *Home Undertaking Co. v. Joliff*, 172 Wash. 78, 19 P (2d) 654.

This right relates, of course, to the whole plan for the funeral and preservation of the remains, as well as to the body itself, either before or after burial, and a deprivation of any substantial portion of that plan is as reprehensible as creating a loss of all of it. In the absence of authority, express or implied, or of reasonable necessity, those not having a legal right must refrain from interfering in cases of this sort.

Respondent admits there is no estoppel against the estate. There was, of course, no testamentary direction for the burial, because the purported will was void; and, had the instrument not been declared void, there is nothing in this record to show that, by the terms of the instrument, Charles Guilliume or anyone else was instructed or directed with reference to the burial of the deceased.

The case of *Home Undertaking Co. v. Joliff*, 172 Wash. 78, 19 P. (2d) 654, compared with the present case, illustrates and defines the rule. In that case, which arose in Seattle, none of those around at the death of the decedent knew that the decedent had any relative; some time before his last sickness, he had favorably mentioned the Home Undertaking Company to his physician; accordingly, that company was called on by the physician to make arrangements for the

funeral; and ''notices of the death of the decedent and later of his intended funeral were published by Home Undertaking Company in the three principal Seattle papers for five days.''

In that case, ''respondent apparently used reasonable diligence to notify the next of kin by advertisements in the newspapers.'' No such consideration in the present case. In that case, while the physician and undertaker had no authority, express or implied, from the next of kin, they nevertheless acted under the reasonable necessities of the occasion, while diligently seeking to notify and find the next of kin. In this case, the next of kin, known as such by the respondent Charles Guilliume, promptly arranged for the funeral, after which he (Charles Guilliume) defiantly and with ''severe'' criticism, took control of the funeral—a controversy in court at such time to enforce a legal right would be exceedingly disagreeable.

In the Seattle case, there was no conflict of rights, so that the one furnishing the expenses of the funeral was allowed to recover. In this case, there was a decided conflict between the interests of the children and the meddling of Charles Guilliume, and it is clear that he defiantly and intentionally despoiled the next of kin of the decedent of their legal rights with respect to the funeral. He was guilty of what is spoken of as officious interference or intermeddling, and, whether the money used by him in paying the undertaker belonged to him, or his wife, or both, neither is entitled to recover.

Reversed, with directions to the superior court to dismiss the action.

MAIN, HOLCOMB, MILLARD, and BLAKE, JJ., concur.