TAMARKIN ET AL., APPELLEES, *v.* THE CHILDREN OF ISRAEL, INC., ET AL., APPELLANTS.   (Two cases.)

(Nos. 4493 and 4494—Decided April 14, 1965.)

*Messrs. Harrington, Huxley & Smith,* for appellees.

*Mr. Martin S. Goldberg* and *Mr. Samuel E. Karam,* for appellants.

LYNCH, J. These are appeals from an order of the Mahoning County Common Pleas Court issuing a writ of mandamus against the respondents, appellants herein, the Children of Israel Congregation and its officers, requiring them to disinter, or to issue a permit for the disinterment of, the bodies of Bertha Tamarkin Heselov and Isadore Tamarkin, who were sister and brother.

In 1934 Bertha Tamarkin Heselov and in 1939 Isadore Tamarkin were buried in a cemetery in Youngstown owned and operated by the Children of Israel Congregation which adheres to the Orthodox Jewish religion.

Their next of kin, consisting of their brothers and sisters and the husband and children of Bertha Heselov, own lots and a mausoleum in another cemetery in Youngstown owned and operated by the Rodef Sholom congregation which adheres to the Reformed Jewish religion.

In May 1963 they made application to the respondents for permission to disinter the above-mentioned bodies under authority of Sections 517.23 and 517.24 of the Revised Code, for the purpose of reinterment in Rodef Sholom Cemetery. The pertinent part of Section 517.23 is as follows:

"The board of township trustees or the trustees or directors of any cemetery association, or other officers having control and management of a cemetery, shall, on application of the next of kin of the deceased, being of full age, disinter or issue a permit for such disinterment and deliver any body buried in such cemetery to such next of kin, on payment of the reasonable cost and expense of disinterment. * * *"

Section 517.24 specifies the form of application under Section 517.23.

The applications were denied, and a petition for a writ of mandamus was filed.

Respondents contend that the application of Sections 517.23 and 517.24 of the Revised Code and the order of the trial court in conformity to these sections are unconstitutional as an attempt to abridge the freedom of religion as guaranteed by the First Amendment and Section 1 of the Fourteenth Amendment of the United States Constitution, and by Section 7, Article I of the Ohio Constitution.

They submitted as evidence a constitution and by-laws of the Children of Israel Congregation in which Article XI sets out the following rules and regulations of the cemetery owned and operated by it, which are pertinent to this case:

"Section 12. After a body has been buried in the Cemetery, the same shall forever remain and under no circumstances shall it ever be removed."

"Section 15. All burials in said Cemetery shall conform to the Rules and Regulations of said Cemetery and Congregation and shall be in strict accordance with the Ritual of this Congregation."

The evidence shows that neither Bertha Tamarkin Heselov nor Isadore Tamarkin was a member of the Children of Israel Congregation at the time of their deaths. Bertha Tamarkin Heselov was a member of Rodef Sholom Temple, and Isadore Tamarkin was a member of Temple Emanuel which is an Orthodox Jewish congregation but adheres to some of the conservative Jewish beliefs. Arrangements for their burials were apparently made by their father, Morris Tamarkin, now deceased, who during his life was a member of Temple Emanuel.

Respondents submitted testimony that, when nonmembers of their congregation were buried in their cemetery, deeds were issued, which specifically provided that burial was subject to the rules and regulations of the cemetery, and a copy of the rules and regulations, including the above-mentioned rules, was attached to the deed. Harold Schechter, Rabbi of Temple Emanuel, testified that the Orthodox Jewish religion prohibits the disinternment of bodies buried in an Orthodox Jewish cemetery except (1) when there is a stipulation in the will of the person involved, (2) when the body is to be removed for burial in Israel, or (3) when the bodies of husband and wife are buried in separate cemeteries. He testified further that it was con-

trary to Jewish law for a brother to disinter a brother for the purpose of burial in another cemetery.

Relators, appellees herein, submitted testimony of Sidney M. Berkowitz, Rabbi of Rodef Sholom Temple, who testified that in a digest of Orthodox Jewish Law called Shulchan Aruch under Yoreh De-ah, chapter 363, paragraph 1, appears the following quotation:

"It is unlawful to remove the body, or the remnants of bones, from one place to another, whether from an honorable place to an equally honorable one, or from a lowly place to an honorable one, not to speak of the reverse. It is, however, permissible to remove the same if the dead is to be re-interred among his own; for it is pleasant for a man to repose alongside his fathers."

Rabbi Berkowitz stated that the purpose of Jewish law on disinterment was basically not to disturb the dead; that indiscriminate disinterment is discouraged; and that the Reformed Jewish religion permits disinterment when the deceased is to be reburied next to his family. It was his opinion that the spirit and text of Jewish law was not being violated by a request to disinter in order to rebury a deceased next to brothers and sisters. He also stated that the Orthodox Jewish law on disinterment has been the subject of debate among Orthodox Rabbis, and he cited Rabbi Moses Sofer, 1763-1835, Germany, in his book "Hatam Sofer," volume VI, page 37, in which Jewish law was interpreted to permit disinterment and called it a meritorious act, particularly when the removal is of benefit to the dead and would be presumably desired by a deceased. Rabbi Berkowitz also said that in 1960 a daughter requested that the body of her father who was buried in 1957 in the Alliance Orthodox Jewish Cemetery be disintered and reburied in the Rodef Sholom Cemetery. The Alliance Orthodox Church, which had a similar provision against disinterment, after consultation with the Orthodox Rabbi of Canton, Ohio, granted permission on the grounds that the deceased was being reburied with family and that the civil law supersedes religious law.

Rabbi Berkowitz testified also that one of the basic laws applying to all Jewish religions was that civil law takes precedence over religious law, and he cited as authority the

following quotation from the Talmud in Baba Bathra as translated by Marcus Jastrow in a Dictionary of Talmudic Terms, at page 301:

"The law of the secular government is law, must supersede the Jewish law in civil affairs."

Rabbi Schechter testified that this only applied to rules that emanate from custom and tradition rather than basic tenets of their religion and that this issue involved a basic tenet of their religion.

A research of the law applicable to this case indicates that there are no reported Ohio cases on the issues raised here. None of the briefs of the respective parties contained any such Ohio cases.

The respondents cited the following cases in which the courts refused the disinterment of bodies buried in Orthodox Jewish Cemeteries because disinterment would transgress a cardinal principle of Orthodox Jewish religion and would constitute a desecretion of the holy burial ground: *Seifer* v. *Schwimmer* (1937), 166 Misc. 329, 1 N. Y. S. 2d 730; *Klahr* v. *Nadel* (1937), 166 Misc. 288, 1 N. Y. S. 2d 733; *In re Weinstein*, 243 App. Div. 738, 277 N. Y. S. 425; *Goldman* v. *Mollen* (1937), 168 Va. 345, 191 S. E. 627.

They also cited the following cases in which the courts refused the disinterment of bodies buried in Catholic cemeteries for reburial in non-Catholic cemeteries. *Yome* v. *Gorman* (1926), 242 N. Y. 395, 152 N. E. 126, 47 A. L. R. 1165; *Ingraffia* v. *Doughterty* (1944 Pa.), 29 North Co. R. 294.

The above cited cases hold that ecclesiastical law is not binding on a court, but it may be competent evidence to show customs and wishes of those who observe its mandates. These cases seem to turn on the fact that the deceaseds were devout members of their respective religions, and the presumption would be that their wishes were that their remains should be treated in accordance with the rules of their religion.

However, the wishes of the next of kin have also to be taken into consideration. In *In re Katz* (1938), 167 Misc. 301, 3 N. Y. S. 2d 754, where it appeared that the original burial in an Orthodox Jewish cemetery was intended to be temporary, application by a husband for disinterment of the body of his

wife for reburial in a family plot in another Jewish cemetery was granted.

In *Application of Sherman* (1951), 107 N. Y. S. 2d 905, a widow's application for removal of her husband's body from one hallowed Jewish cemetery to another hallowed Jewish cemetery in which the widow wished to be buried was granted, notwithstanding the opposition of the Synagogue to such disinterment. The court said "the laws and usages of the religious body must at times be subordinated to the feelings of the survivors." See, also, *Herzl Congregation* v. *Robinson* (1927), 142 Wash. 469, 253 P. 654.

However, neither New York, Virginia, nor Pennsylvania have statutes similar to Sections 517.23 and 517.24 of the Ohio Revised Code granting the next of kin the right to disinter a body buried in a cemetery. There is an extensive review and compilation of cases on this subject in 21 A. L. R. 2d 472, but of the cases cited in this article, only Ohio has statutes such as the one at issue in this case.

When the Legislature is silent, the courts may declare the public policy and mark out the lines of natural justice; but when the Legislature has spoken, within the powers conferred by the Constitution, its duly enacted statutes form the public policy and prescribe the rights of the people, and such statutes must be enforced, and not nullified by the judicial and executive departments of this state. In this regard the Legislature is supreme, and the presumption is that it will do no wrong and will pass no unjust laws. *Probasco, Exr. and Trustee,* v. *Raine, Aud.,* 50 Ohio St. 378, at 391.

It is axiomatic that courts must always indulge in a strong presumption in favor of the constitutionality of legislation, and that a court will not pass upon the constitutionality of a statute or ordinance unless or until it becomes necessary to do so in order to dispose of the case before it. *American Cancer Society, Inc.,* v. *City of Dayton,* 160 Ohio St. 114, at page 121. See, also, 16 American Jurisprudence 2d 336, Constitutional Law, Section 137.

In order that a statute shall fall because it is in conflict with the Constitution, it is necessary that conflict shall be so clear and irreconcilable that both Constitution and statute can-

not operate at the same time and upon the same subject matter. It has been further repeatedly held that the word "clear," as herein used, must be "beyond a reasonable doubt"; that if any doubt exists as to whether the statute is irreconcilably in conflict such doubt is to be resolved in favor of the validity of the statute. *State, ex rel. Doerfler, Pros. Atty.,* v. *Price, Atty. Genl.,* 101 Ohio St. 50, at 53; *State, ex rel. Dickman,* v. *Defenbacker, Dir.,* 164 Ohio St. 142; *City of Xenia* v. *Schmidt,* 101 Ohio St. 437; *County of Miami* v. *City of Dayton,* 92 Ohio St. 215; *State, ex rel. Ach,* v. *Evans,* 90 Ohio St. 243.

Where a statute is challenged on the ground that it is unconstitutional when applied to a particular state of facts, the burden rests upon the party making such attack to present clear and convincing evidence of a presently existing state of facts which makes the act unconstitutional and void when applied thereto. *Belden* v. *Union Cent. Life Ins. Co.,* 143 Ohio St. 329, at 349; *City of Dayton* v. *S. S. Kresge Co.,* 114 Ohio St. 624, 53 A. L. R. 916; *State, ex rel. The Ohio Hair Products Co.,* v. *Rendigs, Commr.,* 98 Ohio St. 251. See, also, 16 American Jurisprudence 2d 390-392, Constitutional Law, Section 172.

Since the respondents are challenging the validity of Sections 517.23 and 517.24 in their application to this case, the burden is upon them to clearly prove their unconstitutionality. The trial court has held that no constitutional questions exist in this case.

It is obvious that there are honest differences in the beliefs of the various branches of the Jewish religion on the matter of disinterment in the fact situation of this case; however, we feel that the determination of this case does not hinge on who is the correct spokesman for the respective branches of the Jewish religion, but rather on what group has the right to make the decisions as to disinterment.

Sections 517.23 and 517.24 give this right to the relators as next of kin. They also are Jewish and obviously find no conflict with these statutes and their religious beliefs.

The respondents contend that the application of these statutes in this case is contrary to the religious beliefs of the Orthodox Jewish religion and is, therefore, an unconstitutional interference with their religious beliefs.

In states without statutes such as Ohio, the general rule seems to be that the religious objections of the owners of a cemetery would not prevent an application for disinterment of a body by next of kin unless the religious objections can be identified as the beliefs and wishes of the deceased. Besides the wishes of the deceased, there are to be considered the religious sensibilities of his next of kin. 21 A. L. R. 2d 498 and 507.

Respondents' position appears to be that they represent the beliefs and desires of the persons buried in their cemetery, rather than the next of kin. They argue that the desires of persons buried in their cemetery have their origins in deep religious beliefs and feelings, that the wishes of the individuals to be buried in this cemetery stood unchanged for thirty years, and that the original burials in the holy ground in this cemetery had the approval and consent of the entire family of the decedents.

The passage of time and the original consent of the family of decedents are factors that are considered in states without comparable statutes such as Ohio, but we feel that such factors could not affect the constitutionality of these statutes.

The sole remaining consideration is whether the respondents represent the beliefs and wishes of the deceased rather than the relators. There is nothing in the record to indicate that either of the deceaseds left any expression either by will or otherwise as to where they should be buried.

Since Bertha Tamarkin Heselov was a member of Rodef Sholom congregation and since the Rabbi of this congregation testified that the spirit and text of Jewish religion was not being violated by a request to disinter in order to rebury next to brothers and sisters, we feel that the application of Sections 517.23 and 517.24, Revised Code, for disinterment of her body for reburial in the cemetery of her congregation next to her brothers and sisters would not violate her religious beliefs.

The body of Isadore Tamarkin presents a different story. He was a member of Temple Emanuel, and the Rabbi of this congregation testified that it was contrary to Jewish law for a brother to disinter a brother for the purpose of burial in another cemetery. However, no testimony was offered as to

Isadore Tamarkin's personal adherence to this belief, while testimony was offered that even among Jewish Orthodox Rabbis there is no universal agreement on this particular tenet.

The fact that several cases have arisen in various states over disinterment from Jewish Orthodox Cemeteries shows that certain members of the Jewish Orthodox religion do not share this belief.

We accord due respect to Rabbi Schechter as an able spokesman for his congregation, but at best his testimony creates an inference that Isadore Tamarkin's religious beliefs would be opposed to disinterment of his remains. However, Isadore Tamarkin was dead and buried many years before Rabbi Schechter came to Youngstown. His brothers should be in a better position to know his religious beliefs on disinterment, and their actions in this case indicate that their religious beliefs on disinterment are contrary to those of Rabbi Schechter.

Since there is not direct evidence that the religious beliefs of Isadore Tamarkin on disinterment were contrary to those of his next of kin, the court is confronted with another possible inference that Isadore Tamarkin's religious views on disinterment would be similar to his next of kin.

We conclude that respondents have not clearly proved that the religious beliefs of Isadore Tamarkin on disinterment would be violated by the application of Sections 517.23 and 517.24 of the Revised Code.

Since there was no clear proof that the religious beliefs and wishes of the deceased were against the wishes of the next of kin to disinter their bodies, this issue is not before this court and we cannot consider what effect this would have had in this case.

Among the exhibits of the respondents in this case is a blank deed form which respondents explained was regularly used when nonmembers purchased lots in the cemetery. This deed form has attached to it a copy of the rules and regulations of the Children of Israel Cemetery, which prohibits removal of any body buried in this cemetery.

We hold that the issuance of such a deed to a nonmember of the congregation was in the nature of a private contract, and

a private contract cannot nullify an existing state statute.

It is elementary that no valid contract may be made contrary to statute. *Bell* v. *Northern Ohio Tel. Co.,* 149 Ohio St. 157, at 158; *Buchanan Bridge Co.* v. *Campbell,* 60 Ohio St. 406.

See, also, 11 Ohio Jurisprudence 2d 331 and 366, Contracts, Sections 93 and 123.

We, therefore, hold that the application of Sections 517.23 and 517.24 of the Revised Code to the instant case is not unconstitutional.

The judgments of the Mahoning County Common Pleas Court, are, therefore, affirmed.

*Judgments affirmed.*

JOHNSON, P. J., and JONES, J., concur.