THE STATE OF OHIO, APPELLEE, *v.*
BABCOCK, APPELLANT.

(No. 81AP-1023—Decided May 25, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Daniel D. Connor Co., L.P.A.,* and *Mr. Daniel D. Connor,* for appellant.

NORRIS, J. Defendant appeals from his conviction in the Court of Common Pleas of Franklin County for the crime of aggravated trafficking in drugs.

Defendant was indicted for having sold an amount of a controlled substance (cocaine) equal to or exceeding three times the bulk amount, a first degree felony requiring, upon conviction, five years' actual incarceration. "Bulk amount," for purposes of this appeal, is an amount equal to or exceeding ten grams of a compound or mixture which contains any amount of cocaine.

Prior to trial, defendant sought an order dismissing the indictments arguing that the General Assembly's classification of cocaine as a controlled substance within Schedule II along with narcotics (opium and opium derivatives) was without rationale and therefore violated his constitutional rights to due process of law and to equal protection of the laws, citing the Fifth and Fourteenth Amendments to the United States Constitution.

At a hearing on the motion, the only evidence submitted was through the testimony of defendant's expert witness, Brian D. Andresen, a professor of pharmacology at the Ohio State University. Dr. Andresen testified that all the compounds listed in Schedule II(A) are narcotic-base chemicals, with the exception of cocaine; that cocaine has a completely different chemical structure than does a narcotic; that narcotics and cocaine have almost opposite impacts upon the human body in that a narcotic tends to sedate and cause respiratory and heart rate depression, while cocaine is a stimulant; that it is "reasonably certain" that cocaine is not a narcotic agent; that narcotics are addictive, causing a physical craving for continuation of the drug, while cocaine is not physically addictive; that the body builds up a tolerance to nar-

cotics, necessitating increasing doses to obtain the same euphoric effect, while cocaine "does not seem to develop a tolerance"; that withdrawal from the use of narcotics results in severe physical symptoms, while there are no physiological withdrawal symptoms when the use of cocaine is discontinued; that ingestion of cocaine is not harmful to the same extent as ingestion of narcotics; that while a person could hallucinate on cocaine, he would not do so on a therapeutic dosage; that "most all studies show that cocaine for moderate users does not become psychologically addicting"; that he believed cocaine should be classified in Schedule II(C) with amphetamines, which are stimulants, or in Schedule III(A) with stimulants; that his opinion that cocaine is not a narcotic but, rather, a stimulant, was "based on a lot of literature"; that only older, outdated literature points to cocaine as a narcotic; and that his analysis of a sample of the substance sold by defendant indicated that it was only twenty-three percent pure cocaine, the balance being salt or sugar, so that, of the one hundred thirteen grams sold, only 25.99 grams were cocaine.

On cross-examination, Dr. Andresen said that a "once-a-weekend user appears to be able to take cocaine and then be free to go to work next Monday and not have that psychological addiction that he can't get through the week without cocaine"; that a proper medical use for cocaine is as a very potent anesthetic to numb the skin or eye for surgery; and that a great amount of cocaine is smuggled into the United States and ingested illegally.

When the trial court overruled his motion to dismiss, defendant withdrew his not guilty plea and entered a plea of no contest to the lesser included offense of aggravated trafficking under R.C. 2925.03(A)(4)—possessing an amount of controlled substance equal to or exceeding the bulk amount, but in an amount less than three times the bulk amount—a third degree felony involving eighteen months'

actual incarceration. The trial court found defendant guilty of that charge.

Because defendant does not assign the alleged error from which he appeals, as required by App. R. 16(A)(2), we will treat the following "propositions of law" found in his brief, as assignments of error:

"I. The gross disparity in penalties for the sale of cocaine and the sale of amphetamines lacks rational basis and therefore violates due process and equal protection of the law.

"II. The mandatory sentence of actual incarceration of five years is excessive in proportion to the gravity of the offense and therefore, violates the United States and Ohio Constitutions prohibiting cruel and unusual punishment.

"III. The overwhelmingly severe penalty imposed by the Ohio Legislature for the sale of one hundred thirteen (113) grams of a substance, some part of which is cocaine, effectively denied due process to this defendant-appellant."

In his second assignment of error, defendant complains that a mandatory sentence of actual incarceration of five years constitutes cruel and unusual punishment. Defendant is without standing to complain about punishment involving five years' actual incarceration as he was not convicted of an offense calling for that punishment; instead, he was convicted of an offense calling for eighteen months' actual incarceration. Ordinarily, a defendant is not permitted to contest the constitutionality of a statute by demonstrating the possible unconstitutional application of the statute to individuals in situations not before the court —overbreadth arguments are limited to situations where First Amendment interests are affected. *State* v. *Daniels* (1980), 61 Ohio St. 2d 220 [15 O.O.3d 232].

This court previously held that the sentence of eighteen months' actual incarceration for violation of R.C. 2925.03 (A)(4) does not constitute cruel and unusual punishment. *State* v. *Suarez* (Dec.

31, 1981), Franklin App. Nos. 81AP-723 & 81AP-724, unreported. The punishment is not so greatly disproportionate to the offense as to shock the sense of justice of the community. See *State* v. *Chaffin* (1972), 30 Ohio St. 2d 13 [59 O.O.2d 51]. The second assignment of error is overruled.

Defendant contends in his third assignment of error that although defenses were available to him, when he was offered a plea bargain which carried a mandatory term of incarceration of eighteen months, as opposed to a mandatory incarceration of five years as called for in the original charge, the disparity in punishment had the practical effect of compelling him to accept the bargain and effectively denied him due process.

As the state points out, it is well-settled that a plea bargain, which represents a voluntary and intelligent choice among alternative courses of action open to a defendant, does not violate due process. See *North Carolina* v. *Alford* (1970), 400 U.S. 25. The third assignment of error is overruled.

Two arguments are raised under the first assignment of error. First, defendant argues that he was denied equal protection and due process of law because the statute imposes a penalty based upon the gross weight of an adulterated compound or mixture, rather than upon the net weight of the actual amount of the controlled substance found in that compound or mixture. On the basis of the one hundred thirteen grams sold by defendant, he was charged with selling an amount equal to or exceeding three times the bulk amount (ten grams times three equals thirty grams). However, defendant entered his plea to, and was convicted of, selling an amount equal to or exceeding the bulk amount, but in an amount less than three times the bulk amount (between ten and thirty grams). Defendant's expert testified that the amount of pure cocaine in the one hundred thirteen-gram compound or mixture amounted to

approximately twenty-six grams. Accordingly, defendant possessed an amount of pure cocaine which was at least equal to the bulk amount, but less than three times the bulk amount. Defendant is without standing to contest application of the statute to a situation not before the trial court. *State* v. *Daniels, supra.*

More troublesome is defendant's assertion that the General Assembly's classification of cocaine is without a rational basis. Although defense counsel has thoroughly and persuasively briefed the issue, we find his argument to be without merit.

In determining whether or not a legislative classification is grounded upon a rational basis, the test is whether any state of facts, either known, or which can reasonably be assumed, supports the classification. If the question is at least debatable, then the decision is a legislative one and the classification will be upheld. *United States* v. *Carolene Products Co.* (1938), 304 U.S. 144. In other words, it is only where it is clear beyond doubt that the legislative classification is without any rational basis that the courts will step in to set aside the classification.

We recently addressed the classification of cocaine complained of, in these words:

"* * * Parenthetically, it is noted that cocaine is classified as a Schedule II drug under federal law and federal courts have uniformly rejected the same contention made by defendants, finding that the legislative authority had a rational basis for the classification. E.g. *United States* v. *Marshall* (9th Cir. 1976), 532 F.2d 1279, in which the court stated that defendant's argument should be addressed to the legislature and not to the courts. This court has also previously rejected defendants' argument. * * *." (*State* v. *Suarez, supra,* at 4407.)

Although courts are often urged to step in where legislatures fear to tread, public policy is best left to the legislative branch, where it was entrusted by our

Constitution makers. Legislatures may not be perfect, but at least their processes are better suited to lawmaking than ours: their deliberations are conducted in public, and citizens may petition legislators throughout the lawmaking process. In a free society, lawmaking should remain a participatory process. We are cognizant of defense counsel's assertion that other judges on other courts have engaged in lawmaking in this area and in others. Perhaps they should lay down their judicial burdens and declare for the legislature.

A court's function is not to create legislation but, rather, to look over the shoulders of the General Assembly and prevent unreasonable legislation. It is a function of limited oversight. While defense counsel's argument is couched in terms of oversight, in actuality we are being asked to substitute our judgment for legislative hearings. The fact that one expert witness disagrees with a legislative classification will not suffice to establish that there is no rational basis for the classification. It will be noted that even defendant's expert was not in a position to say that *all* bodies of scientific knowledge would agree that the classification was unreasonable; implicit in his testimony is a concession that the question is debatable. Some of the literature upon which the expert said he based his opinion emphasizes the debatable nature of cocaine's similarities and dissimilarities when compared with narcotics and amphetamines, and of its potential for abuse relative to those substances. For example, in defendant's Exhibit B, we read that "* * * [s]mall doses of cocaine given systemically may slow the heart * * *. The most important local action of cocaine is its ability to block nerve conduction * * *." In Exhibit C we are told that:

"High-dose use or long-term administration of cocaine may result in paranoid feelings of persecution and excitability that may cause the user to perpetrate extreme acts of violence. Cocaine-induced hallucinations may involve all five senses, with visual phenomena the most common and first to occur. * * *

"* * *

"Although cocaine is perceived by many to be a relatively 'benign' stimulant, in addition to its adverse behavioral effects, toxic doses may increase heart rate with palpitations, and cause fever, abdominal pain, convulsions, and death resulting from respiratory failure. A recent report on cocaine-related deaths documents these potential dangers.

"* * *

"There is no substantial evidence to suggest that psychological dependence develops after the occasional recreational use of cocaine. Unlike virtually all other major drugs of abuse, tolerance has not been shown to develop to cocaine; physical dependence has not been demonstrated either. Notwithstanding these saving graces, the behavioral and physiological risks associated with its use strongly argue that street beliefs regarding its safety require revision."

Even standard dictionary references point up the debate. The American Heritage Dictionary (1979) refers to cocaine as a "* * * narcotic alkaloid * * * used as a surface anesthetic." Webster's Third New International Dictionary (1966), asserts that cocaine "* * * has first a stimulating then a narcotic effect * * * acts as a local anesthetic * * *." Surely, the General Assembly is permitted the latitude to side with standard reference works.

The point is that where a classification is the subject of legitimate debate, the choice made by the General Assembly reflects a societal policy which must be adhered to by the courts. Accordingly, reclassification of cocaine for penalty purposes is a subject which should be addressed to the legislative branch, not to the courts.

In enacting its classifications of controlled substances, the General Assembly

provided a safeguard to allow for the dynamics of debate in the scientific community. Substances may be added, removed, or transferred when changes are deemed appropriate by the State Pharmacy Board, or when the United States Attorney General initiates changes in federal classifications. Indeed, pursuant to these provisions, changes have been made in the classifications since they were originally enacted by the General Assembly.

Because defendant failed to meet his burden as announced in *United States* v. *Carolene Products Co., supra,* we find that the General Assembly·acted upon some rational basis in including cocaine, for punishment purposes, within a schedule which also includes narcotics, and the first assignment of error is overruled.

The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.