OPINION
{¶ 1} Beth Lewis appeals from a judgment of the Montgomery County Court of Common Pleas, which found her in contempt of court for refusing to answer certain questions before a grand jury. Lewis, who is an attorney, refused to testify on the ground that the information sought was protected by the attorney-client privilege.
{¶ 2} The background of the case is as follows. In 1999, nine-year-old Erica Baker disappeared in Kettering. At some point during their investigation, the police apparently received information that Jan Marie Franks may have been inside a van that struck and killed Erica and that the people in the van then took the body and disposed of it. No trace of Erica has ever been found. The police sought to question Franks about the information they had received, but she was uncooperative. Lewis, a Federal Public Defender, had represented Franks on unrelated federal offenses. The police apparently suspect that Franks may have confided information about Erica's disappearance to Lewis in the course of their attorney-client relationship. The precise basis for the state's belief that Franks was involved in Erica's disappearance or that Franks had confided in Lewis about involvement in that crime is unclear because we do not have the grand jury testimony of the state's other witnesses.
{¶ 3} Franks died on December 30, 2001. The state subsequently sought to obtain testimony from Lewis before a grand jury about Franks' involvement in Baker's disappearance. A subpoena was issued and, at the state's request, the trial court found that the consent of Franks' surviving spouse to Lewis's testimony constituted a valid waiver of the attorney-client privilege. When Lewis was called before the grand jury, however, she still refused to testify on the ground that doing so would violate the attorney-client privilege. After the trial court repeatedly ordered Lewis to testify, it found her in contempt and ordered her to be held in the Montgomery County Jail. Lewis filed a notice of appeal, and we granted a stay of execution of the trial court's judgment pending appeal.
{¶ 4} Lewis raises one assignment of error.
{¶ 5} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT ORDERED ATTORNEY LEWIS TO DISCLOSE CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS AND WHEN IT HELD HER IN CONTEMPT OF COURT FOR PROTECTING THOSE COMMUNICATIONS."
{¶ 6} The statutory provision at issue in the dispute about whether Lewis must testify is R.C. 2317.02(A), which provides:
{¶ 7} "The following persons shall not testify in certain respects:
{¶ 8} "(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject[.]"
{¶ 9} In this case, it is the consent of Franks' surviving spouse that is at issue and, in the interest of simplicity, we will refer in our discussion only to the surviving spouse, rather than to "the surviving spouse or the executor or administrator of the estate of the deceased client."
{¶ 10} Lewis argues that the language "may testify * * * by the express consent of the surviving spouse" means that where the surviving spouse consents, the decision whether to testify is within the attorney's discretion. She contends that this language does not authorize a court to compel the attorney to testify. She also contends that the language at the end of R.C. 2317.02(A) sets forth the specific circumstances in which the attorney "may be compelled to testify." This latter language lends support to her position that the former language does not authorize compelling the attorney to testify. The state, on the other hand, argues that the language of R.C. 2317.02(A) lifts the prohibition that an attorney shall not testify about communications with a client, and the state concludes that an attorney must testify when the surviving spouse consents and a grand jury subpoena has been issued. Despite reaching such divergent conclusions about the meaning of the statute, neither party believes that the statute is ambiguous.
{¶ 11} After studying the statute closely, we conclude that the provision which states that the attorney may testify with the consent of the surviving spouse must be interpreted to mean that the attorney's testimony may be compelled under those circumstances. The statute provides that the attorney "may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse * * * of the deceased client[.]" This statute vests the attorney with no more discretion when the surviving spouse consents to the testimony than when the client himself or herself consents to the testimony. We can envision no situation, however, in which an attorney would have discretion not to testify if the client validly consented to such testimony. It is well settled that the privilege belongs to the client, not to the attorney. See Annotation (1959), 67 A.L.R.2d 1268, 1269. Therefore, where the client has consented, we believe that an attorney would have no choice but to testify about otherwise privileged communications if called upon to do so. There may be compelling policy reasons to differentiate between consent given by a client and consent given by a client's surviving spouse or representative. However, the language of the statute puts the consent of the client and the consent of the client's surviving spouse on equal footing and simply does not allow us to draw such a distinction.
{¶ 12} The supreme court has held that "a lawyer's duty `not to use or disclose confidential client information * * * is superseded when the law specifically requires such use or disclosure.'" (Citations omitted.) In re Original Grand Jury Investigation, 89 Ohio St.3d 544,547, 2000-Ohio-170. In so holding, the court stated that language written in permissive terms can sometimes be interpreted to require disclosure. In Original Grand Jury Investigation, the court interpreted the language of Disciplinary Rule 4-101(C)(2), which provides that an attorney may
reveal confidences or secrets when permitted under the Disciplinary Rules or required by law or court order, to require such disclosure by creating a "forced" exception to confidentiality in certain circumstances. We interpret the "discretionary" language of R.C. 2317.02(A) in the same manner.
{¶ 13} Lewis also argues that the legislature's use of the language "the attorney may be compelled to testify" in the latter portion of R.C. 2317.02(A) shows that the legislature would have stated that testimony could be compelled with the consent of the surviving spouse if that were truly what it had intended in the earlier part of the statute. In other words, Lewis claims that the legislature would have used the words "may be compelled" throughout the statute if that were the intended effect. While the statute may be susceptible to this interpretation, we think the better interpretation is that the second exception set forth under R.C. 2317.02(A) refers to an entirely different type of situation than the first exception. The second exception appears to embody a situation in which the client attempts to exert the privilege but the privilege is deemed to have been waived either by the client's own conduct (his own testimony on the matter) or by R.C. 2151.421(A), which requires attorneys to report suspected abuse or neglect. On the other hand, the first exception appears to presume that the attorney's testimony — and thus the waiver of the privilege — would be in keeping with the client's wishes, whether the consent is given by the client himself or by his surviving spouse or representative. In the typical situation under this exception — i.e., the testamentary exception, which will be discussed further infra — a person who is antagonistic to the attorney's client will not be seeking to compel the attorney's testimony, and it would therefore be unnecessary to couch the exception in the "may be compelled to testify" language. The attorney's testimony is voluntary, not compelled, in the sense that his client or his deceased client's representative has consented to the testimony. We recognize that, in some circumstances, such as the situation presented here, the consent of the surviving spouse is not necessarily consistent with the client's wishes, but the legislature did not provide for a different procedure in such a situation.
{¶ 14} Lewis also characterizes R.C. 2317.02(A) as a testamentary exception to the attorney-client privilege. Such testamentary exceptions have been adopted by many states in order to effectuate a client's wishes when a dispute arises among potential heirs. Such exceptions are based on the presumption that the client would have wanted to waive his privilege in order to make his testamentary intentions known. Lewis argues that, because this case does not present a dispute among potential heirs to which her testimony would be addressed, the surviving spouse should not be permitted to waive the privilege in this instance.
{¶ 15} According to The New Wigmore: Evidentiary Privileges § 6.13.2 (2002), California Evidence Code § 957 codifies a typical contemporary version of the testamentary exception. It states: "There is no privilege under this article as to a communication relevant to an issue between parties all of whom claim through a deceased person, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction." See, also, Hawaii Rule of Evidence 503(c)(3). If, indeed, the Ohio legislature intended only to create a testamentary exception to the attorney-client privilege by adding to R.C. 2317.02(A) the provision that a surviving spouse or representative of the estate may consent to the attorney's testimony, its effort was so inartful as to prevent us from giving the provision that interpretation. The plain language of the statute in no way limits the consent to disputes among heirs. Moreover, the structure of the statute gives equal effect to the client's own consent and to the consent of the surviving spouse or representative, which makes it impossible for us to construe the statute so narrowly as to apply only in testamentary disputes. "We are not free to add words to a statute on the basis that the addition strikes us as desirable, or because we believe the legislature `meant' to include it." LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 212, citing WheelingSteel Corp. v. Porterfield (1970), 24 Ohio St.2d 24, 28. Thus, we cannot countenance Lewis's interpretation of this provision as only a testamentary exception to the attorney-client privilege.
{¶ 16} Lewis also contends that the trial court's decision, i.e., forcing her to testify, is contrary to public policy and to the common law attorney-client privilege. We note, however, that "public policy is best left to the legislative branch, where it was entrusted by our Constitution makers." State v. Babcock (1982), 7 Ohio App.3d 104,106-107. "[W]hen the Legislature has spoken, within the powers conferred by the Constitution, its duly enacted statutes form the public policy and prescribe the rights of the people, and such statutes must be enforced, and not nullified by the judicial and executive departments of this state. In this regard the Legislature is supreme * * *." Tamarkin v.Children of Israel, Inc., (1965), 2 Ohio App.2d 60, 65, citing Probascov. Raine (1893), 50 Ohio St. 378, 391. See, also, State v. Smorgala
(1990), 50 Ohio St.3d 222, 223-224. While the attorney-client privilege is rooted in the common law, its particulars are a matter of state law, articulated by the Ohio General Assembly in R.C. 2317.02(A). Although we may question the wisdom of allowing a surviving spouse or representative to waive the attorney-client privilege in non-testamentary matters, we are not in a position to substitute our judgment for that of the legislature, and we must presume that the statute, as written, embodies the legislature's public policy determinations.
{¶ 17} The question presented in this case is analogous to the question presented in State v. Smorgala, supra. In that case, the supreme court considered whether the courts should create a public policy limitation upon the statutorily created physician-patient privilege in a case involving drunk driving. The state wanted to obtain information about the driver's blood alcohol level, but it had not requested a blood alcohol test as authorized by R.C. 4511.191(A). Id. at 222. The doctor had obtained the information on his own initiative as part of the patient's treatment. Id. The state urged that the public interest in the effective prosecution of drunk driving cases outweighed any considerations which supported the uninhibited flow of information between doctor and patient. Id. at 223. The court held that judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy. Id. at 224. Although the argument in Smorgala was that the courts should find an exception to the physician-patient privilege, and the argument here is that we should not enforce a legislatively expressed exception to the attorney-client privilege, the rationale for leaving these matters in the hands of the legislature is the same.
{¶ 18} Finally, Lewis emphasizes the fact that, in this case, there is compelling evidence that the surviving spouse did not effectuate the client's wishes in giving consent to the attorney's testimony. It is undisputed that during Franks' life, she had been unwilling to cooperate with the police or with the Baker family in providing information about Erica's fate or whereabouts, and there is nothing to suggest that Franks would have felt any differently about her attorney assisting in the investigation after her death. The legislature, however, in the statute that it drafted, did not provide for any weighing of the client's wishes. It could have done so, and if it had anticipated a situation in which a surviving spouse's consent would have clearly obviated the client's wishes, perhaps it would have drafted the statute differently. We note, however, that there are many competing interests at play in the protection of the attorney-client privilege. The attorney-client privilege promotes trust in the representational relationship, thereby facilitating the provision of legal services and ultimately the administration of justice. However, "an invocation of the attorney-client privilege should not go unexamined `when it is shown that the interests of the administration of justice can only be frustrated by [its] exercise.'"Swidler Berlin v. United States (1998), 524 U.S. 399, 118 S.Ct. 2081,2088 (O'Connor, J., dissenting). Especially in the criminal context, the legislature might have reasonably concluded that, where a compelling law enforcement interest is at stake, the harm of precluding critical evidence that is unavailable by any other means outweighs the potential disincentive to forthright communication between attorney and client. Id. at 2090 (O'Connor, J., dissenting). We cannot speculate about the full range of circumstances in which the legislature intended for R.C.2317.02(A) to apply. Nor can we conclude that compelling Lewis to testify in this criminal proceeding is so lacking in reason as to be beyond the legislature's contemplation, notwithstanding the fact that Franks might not have acquiesced in such testimony.
{¶ 19} The assignment of error is overruled.
{¶ 20} The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.