[No. 9686.   Department Two.   October 16, 1911.]

BESSIE F. WOOD, *Appellant,* v. E. R. BUTTERWORTH & SONS
*et al., Respondents.*[1]

DEAD BODIES—PLACE OF BURIAL—RIGHT OF SELECTION—WIDOW OR
NEXT OF KIN—DESIRES OF DECEASED.   The widow's primary right to
control the burial of her deceased husband depends upon the
equities of the case, and will not prevail as against the wishes of
his next of kin, where she desired his burial in this state and he
was a nonresident, prominent in another state, and had often ex-
pressed a sincere desire of being buried in that state, where his
first wife and two children of his second wife were buried and his
next of kin live; the wishes of the deceased in such case having a
controlling force.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered May 20, 1911, upon findings
in favor of the defendants, dissolving a temporary injunction
restraining the defendants from removing the body of their
father to another state for the purpose of burial.   Affirmed.

*H. A. P. Myers* and *Walter L. Johnstone,* for appellant.

*Harold Preston* and *Walter S. Fulton,* for respondents
Wood.

CHADWICK, J.—Chauncey L. Wood went to the then ter-
ritory of Dakota in the year 1877.   He was a young man
just entering upon the practice of the profession of the law.
He finally settled at Rapid City, where he made his home
up to the time of his death, which occurred in Seattle on
January 16th, 1911.   Mr. Wood left two sons, the issue
of a former marriage.   These sons are now residents of
the state of South Dakota, and are the defendants in this
proceeding.   The first wife having died, Mr. Wood re-
married in the year 1894.   His widow, Bessie F. Wood,
plaintiff, survives him.   Mr. Wood was a man of character,
and was possessed of unusual ability in his profession, so

[1]Reported in 118 Pac. 212.

that he was often called to serve the public. He was four times mayor of his home town. He had served his county as prosecuting attorney several terms. He was a member of the constitutional convention of the state of South Dakota, and in the fall of 1910 was the candidate of the democratic party for governor of the state. He had become a public character, and had in some degree accumulated a fair share of worldly goods.

In 1905 Mr. Wood and his wife sojourned at Seattle while making a trip through the west. The climate and surroundings attracted Mrs. Wood, and she determined to make her home at that place. A home was accordingly purchased on Queen Anne Hill, and she has ever since, and is now, residing and intends to there reside in the future. Mr. Wood made occasional trips to Seattle; plaintiff says every year, but we think not more than three or four trips are shown by the record. Plaintiff made infrequent trips to Rapid City, but on such occasions rooms were taken at the hotel, although a pretentious home was maintained by Mr. Wood at Rapid City, which he occupied while his wife was in Seattle. This home was sold in May, 1910, for $8,000, and the money given to Mrs. Wood. The first wife, as well as two daughters by the second wife, are buried at Rapid City, though in different cemetery lots, neither of which was owned by Mr. Wood. In the political campaign in which he was engaged in 1910, the republican press charged that Mr. Wood intended to leave South Dakota and take up his residence in Seattle. This charge, which was manifestly grounded upon the fact of his wife's residence and made for political purposes, was met by Mr. Wood, who said in all his public speeches thenceforth that he was in fact a resident of South Dakota, that he expected to spend the remaining years of his life there, and that he hoped to be buried at Rapid City, where he had spent his life, had accumulated his honors, and his children had been born. Private conversations of the same import are testified to by friends and acquaintances.

Mr. Wood left Rapid City early in December, arriving at Seattle on the fifth of the month.   On the 26th, he was taken ill of appendicitis.   An operation followed and, although pronounced successful——and it' was so in the sense that the patient survived the anaesthetic——he nevertheless died after lingering until the 16th day of January.   Plaintiff alleges that Mr. Wood, when on his deathbed, asked her if she intended to remain in Seattle, and upon being told that she did, he told her that, in the event of his death, she should purchase a lot and bury him where he would be a comfort to her and the baby, a child which they had raised from infancy and which was legally adopted a day or two before his death.

It is indicated that Mr. Wood at one time had some notion of moving to Seattle.   Plaintiff so swore, and submits as a corroborating circumstance a quotation from a letter written in October, 1909, in which he says to the baby that he had sold the home in Rapid City, that he had no other home except the house in Seattle, and that he would come out and stay with his wife and baby "before so very long." On January 3, 1910, he wrote:   "I will get out of here so as to put in at least ten years of active work in Seattle before I sit down to contemplate myself, as the Arab does when he desires to appease the wrath of Allah."   On the other hand, his utterances in the gubernatorial campaign, to which we confess no great importance should attach, are strengthened by the tenor of his business correspondence between the time of his arrival in Seattle and the time he was taken to the hospital.   Every letter offered——and there are a number of them ——indicates an intention to return to South Dakota as soon as his wife's health would permit, and in any event not later than the following March, and also a disposition to hold his grasp upon his personal affairs.   There was a strong bond of sympathy and affection between the deceased and plaintiff, who now asserts her rights to direct the disposition of her husband's remains.   Defendants were preparing the body of Mr. Wood for shipment to South Dakota when they were

restrained by a preliminary order. The case afterwards came on for trial, and from a decree dissolving the temporary order and giving the remains over to the defendants Ben Wood and Buel Wood, to be taken to South Dakota, this appeal is prosecuted.

The rule, as quoted in 8 Am. & Eng. Ency. Law, pp. 826 and 836, is not denied. It follows:

"As a general rule, the right of burial and the right to select the place of burial rests in the absence of any testamentary direction on the part of the deceased, in the next of kin. But in the case of a deceased wife the right is in the husband rather than in her next of kin. And although the decisions are not entirely free from incongruity, it is now well settled that a widow is entitled to control the burial of her deceased husband as against his next of kin."

But this rule is not universal. In fact, a review of the authorities cited in the briefs of counsel confirms us in the belief that no fixed rule can be laid down in cases of this kind; for while, as stated in *Hackett v. Hackett*, 18 R. I. 155, 26 Atl. 42, 49 Am. St. 762, 19 L. R. A. 558, the primary right to control the burial of a husband should be with the widow in preference to the next of kin, yet nevertheless the right is dependent upon the peculiar circumstances of the case. So it is asserted that the nature of this case is such that no hard and fast rule can be laid down, but the inherent equity of the case, to be gathered from all the attending facts and circumstances, should control the court's decree. In *Fox v. Gordon*, 16 Phila. (Pa.) 185, the court said:

"If a dispute arises about it among relatives, as in the present case, it must be determined by principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of the case. No general rule to be applied absolutely in all cases can be laid down upon the subject, for what is fit and proper to be done in each case must depend upon the special circumstances of that case. It is a jurisdiction which belongs to equity, and the chancellor will exercise it with great care, having regard to

what is due to the natural feelings and sensibilities of individuals, as well as to what is required by considerations of public propriety and decency."

And, under the generally accepted rule, that a person can make testamentary disposition of his remains if considerations of propriety and decency do not intervene, it has been declared that, when otherwise doubtful, the chancellor should give heed to the wishes of the deceased if they can be ascertained. In *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 Atl. 878, 99 Am. St. 795, 64 L. R. A. 179, it is said that the question whether the wishes or directions of the deceased should prevail against those of a surviving husband or wife is an open question. But the rule, or rather lack of rule, as we have stated it, is admitted. While in *Thompson v. Deeds*, 93 Iowa 228, 61 N. W. 842, 35 L. R. A. 56, it is said:

"It has always been, and will ever continue to be, the duty of courts to see to it that the expressed wish of one, as to his final resting place, shall, so far as possible, be carried out. In one view, it is true it may not matter much where we rest after we are dead; and yet there has always existed, in every person, a feeling that leads him to wish that after his death his body shall repose beside those he loved in life. Call it sentiment, yet it is a sentiment and belief which the living should know will be respected after they are gone."

Like expressions are found in the following cases, all of which sustain the principle that, where there is a controversy, the wishes of the deceased person, if ascertained, should be given controlling force: 13 Cyc. 271; *In re Richardson*, 29 Misc. 367, 60 N. Y. Supp. 539; *In re Riegle's Estate*, 10 Misc. Rep. 491, 32 N. Y. Supp. 169; *In re Donn*, 14 N. Y. Supp. 189; *Wilson v. Read*, 74 N. H. 322, 68 Atl. 37, 124 Am. St. 973, 16 L. R. A. (N. S.) 332; *Pierce v. Proprietors of Swan Point Cemetery*, 10 R. I. 227, 14 Am. Rep. 667.

The trial judge found, and we think he is sustained by a clear preponderance of the evidence, that the hope of the deceased so often expressed was sincere, although he had cherished the thought of coming to Seattle a year before; that

at and for some time before his death his declarations that he wanted to be buried where he had met the struggles of life and won its rewards, expressed his true intent. In the instant case the deceased was prominent in the social, political, and business life of his state. He had been a factor in its development. He had helped change its swaddling clothes for the garments of statehood. The man and his memory belong to that state and not to this, and under all the circumstances, we are inclined to follow the lower court and hold that the will of the deceased, when coupled with his relation to the state of South Dakota, shall have control over the desire of the widow that the remains of her husband be interred near her, but far from the place he called home.

The fact appearing that the deceased did not own either the lot in which his former wife or the one in which his two children by his second wife are buried, we trust that the spirit of equity which impels this decision will move respondents to purchase a lot apart from either, where the grave of the deceased may be marked and his memory recalled, unburdened with the thought of family differences. To do otherwise would work injustice to two women, one living and the other dead, whose devotion to the deceased was and is unquestioned.

Affirmed.

DUNBAR, C. J., ELLIS, CROW, and MORRIS, JJ., concur.