IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THERESA WHITNEY, a married woman in her individual capacity; ROSE ANN SANDS, a single woman, | ) ) ) ) | No. 31415-4-III (consolidated with No. 31475-8-III) |
| Appellants, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| CECILIA CERVANTES, a single woman; CERVANTES LAW OFFICE, INC., a Washington corporation, RICK PHILLIPS and ANN PHILLIPS, husband and wife, d/b/a Telford's Chapel of the Valley, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Theresa Whitney sought control over burial of her uncle's body. Rick Phillips of Telford's Chapel of the Valley denied Ms. Whitney's request and allowed Cecelia Cervantes, the uncle's personal representative, to control burial. Ms. Whitney and her sister Rose Ann Sands filed suit against Mr. Phillips and Telford's for interference with the next of kin's right to control burial of a family member, tortious interference with a dead body, and negligence. Mr. Phillips and Telford's moved for summary judgment. The trial court dismissed all claims, finding that

the sisters failed to prove that Mr. Phillips acted intentionally when he denied control

over the burial. Ms. Whitney and Ms. Sands appeal. Finding no error, we affirm.

FACTS

Lawrence Wilhalm died in January 2011. He was not married, had no children,

and outlived his parents and siblings. Mr. Wilhalm's closest surviving relatives were his

nieces, Ms. Whitney and Ms. Sands, and their brother.

In 1999, more than 10 years before his death, Mr. Wilhalm executed a valid will

that included burial plans. He wished for a burial according to the Catholic faith, with

services to be held at the St. Rose of Lima Catholic Church and interment in the church

cemetery. Additionally, he stated that he made arrangements with Nicoles Funeral Home

of Ephrata, Washington, gave the model and color of the casket, the dimensions and

description of the tombstone, and the color of suit in which he wanted to be buried. Mr.

Wilhalm's will stated that any changes or other details regarding his funeral arrangements

shall be set forth in a separate letter of interment. Mr. Wilhalm's will named Cecelia

Cervantes as his alternate personal representative to manage, settle, and administer his

estate in accordance with the will. Ms. Cervantes is an attorney.

In 2010, Mr. Wilhalm created a document entitled "Burial Instructions: Lawrence

E. Wilhalm." Clerk's Papers (CP) at 46. Again, he requested a Catholic funeral and

2

burial at Saint Rose of Lima Cemetery in Ephrata. As a new addition, he stated that his personal representative shall arrange for his burial, transportation, and interment of his remains through Telford's or another facility within the personal representative's discretion. The document was signed by Mr. Wilhalm, but was not signed by a witness. Ms. Cervantes's law office prepared Mr. Wilhalm's 2010 burial instructions.

After Mr. Wilhalm died at a Spokane hospital, Ms. Cervantes contacted the hospital for release of his remains. The hospital sent Ms. Cervantes a letter stating that it was releasing Mr. Wilhalm's remains to Telford's based on Ms. Cervantes's status as personal representative, Mr. Wilhalm's instructions, and Ms. Cervantes's representation that there was no prepaid plan at Nicoles Funeral Home.

Ms. Cervantes contacted Mr. Phillips at Telford's. Based on a prior encounter with Mr. Wilhalm, Mr. Phillips knew that Ms. Cervantes was Mr. Wilhalm's attorney and that Mr. Wilhalm wanted Telford's to handle his funeral arrangements. Ms. Cervantes showed Mr. Phillips the burial instructions indicating Mr. Wilhalm's wishes. Ms. Cervantes said that she was acting as the personal representative of Mr. Wilhalm's estate and would be in charge of the funeral and burial. Mr. Phillips did not see a reason to question Ms. Cervantes's authority to act as Mr. Wilhalm's personal representative.

3

Ms. Whitney contacted the hospital within 48 hours of her uncle's death. She was told that Ms. Cervantes gave the hospital instructions with respect to Mr. Wilhalm's body. She then contacted Telford's and spoke to Mr. Phillips to make funeral plans and arrangements. She informed Mr. Phillips that she was Mr. Wilhalm's closest surviving relative. She advised Mr. Phillips that Mr. Wilhalm had made arrangements with Nicoles Funeral Home and that she wanted to make sure that her uncle's wishes were followed. She also inquired about Mr. Wilhalm's burial policies, the amounts of the policies, and the named beneficiaries of the policies.

Mr. Phillips told Ms. Whitney that Ms. Cervantes claimed to be in charge of making Mr. Wilhalm's funeral arrangements and that Ms. Cervantes presented documents to establish her authority to do so. Ms. Whitney was upset and overwhelmed emotionally. When asked what documents were presented, Mr. Phillips told Ms. Whitney only that the documents were in order and that he was going to allow Ms. Cervantes to control the disposition of Mr. Wilhalm's body.

Ms. Whitney contacted Mr. Phillips three more times and asked about the paperwork and reminded him that Ms. Cervantes was not related to Mr. Wilhalm. Mr. Phillips did not respond to the inquiry. Mr. Phillips also would not provide the time, date,

4

and location of the funeral service, and explained that Ms. Whitney would need to contact Ms. Cervantes for the information.[1]

Eventually, Ms. Whitney was told by a church parishioner that the funeral service was scheduled for the next day at Saint Rose of Lima Catholic Church in Ephrata. Despite the short notice, Ms. Whitney and Ms. Sands attended the service. At the conclusion of the funeral, Mr. Phillips approached Ms. Whitney and demanded that she give Ms. Cervantes the guest book.

Ms. Whitney and Ms. Sands (collectively Ms. Whitney) filed a complaint for damages against Mr. Phillips and Telford's (collectively Mr. Phillips), and Ms. Cervantes for interfering with the sisters' right as next of kin to control disposition of Mr. Wilhalm's remains.[2] Ms. Whitney asserted (1) intentional interference with the right to control and direct the burial of a family member's corpse, (2) tortious interference with a dead body, and (3) negligence. Mr. Phillips moved for summary judgment dismissal of all claims.

The trial court reviewed the declarations from Ms. Whitney, Ms. Sands, and Mr. Phillips. The court concluded that Ms. Whitney failed to establish an intentional act for the purpose of summary judgment. Also, the court concluded that Washington has not

---

[1] There is no dispute over whether Mr. Wilhalm received the funeral arrangements that he requested in his will.

[2] Ms. Whitney's claims against Ms. Cervantes are not subject to this appeal.

adopted the restatement that permits an action based on negligence. Thus, the court granted Mr. Phillips's motion for summary judgment and dismissed Ms. Whitney's claims with prejudice. A stipulated order was thereafter entered pursuant to CR 54(b), permitting Ms. Whitney's appeal of the summary judgment prior to adjudicating her claims against Ms. Cervantes.

## ANALYSIS

*Right to Control and Direct Burial.* A trial court's decision on summary judgment is reviewed de novo, meaning this court will engage in the same inquiry as the trial court. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197, 943 P.2d 286 (1997). Summary judgment is proper if the record before the court shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 197-98 (quoting CR 56(c)). "The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party." *Id.* at 198. The facts presented must be more than speculative and argumentative assertions. *Adams v. King County*, 164 Wn.2d 640, 647, 192 P.3d 891 (2008). "The court should grant summary judgment 'only if reasonable persons could reach but one conclusion.'" *Id.* (quoting *Retired Pub. Employees Council v. Charles*, 148 Wn.2d 602, 613, 62 P.3d 470 (2003)).

Ms. Whitney challenges the court's dismissal of her common law claim of intentional interference with the next of kin's right to control and direct the burial of a family member's corpse. She contends that as next of kin, she was entitled to be the contact person for the preplanned disposition of her uncle's body, and that Mr. Phillips violated her right by allowing Ms. Cervantes to plan and control arrangements despite Ms. Whitney's objection.

"The right to the next of kin to control and direct the burial of a corpse and arrange for its preservation is not only a natural right, embracing a high order of sentiment, but has become to be well recognized as a legal right." *Guilliume v. McCulloch*, 173 Wash. 694, 696, 24 P.2d 93 (1933). Absent a decedent's testamentary disposition stating otherwise, the right to control burial belongs exclusively to the next of kin. *Id.* at 697 (quoting *Herzl Congregation v. Robinson*, 142 Wash. 469, 473, 253 P. 654 (1927)). "[T]here is a *quasi* property right in a dead human body inherent in the immediate relatives of the deceased." *Herzl*, 142 Wash. at 472.

While the right to control disposition of a body arose out of common law, it is now codified by statute in RCW 68.50.160.[3] A person has the right to control the disposition

---

[3] The Washington Supreme Court in *Herzl* noted that the right of custody over a dead body and disposal of the body has been recognized by Washington statute. *Herzl*, 142 Wash. at 471.

of his or her own remains. RCW 68.50.160(1). To execute this right, "[a] valid written document expressing the decedent's wishes regarding the place or method of disposition of his or her remains, signed by the decedent in the presence of a witness, is sufficient legal authorization for the procedures to be accomplished." RCW 68.50.160(1).

However, if the decedent has not given directions or made prearrangements with a funeral establishment, the right to control disposition of the remains vests to the persons in the following order: (a) the surviving spouse, (b) the surviving adult children of the decedent, (c) the surviving parents of the decedent, (d) the surviving siblings of the decedent, and (e) person acting as a representative of the decedent under the signed authorization of the decedent. Former RCW 68.50.160(3) (2010).

A licensed funeral establishment's liability for burying human remains is limited. RCW 68.50.160(5). If the funeral establishment makes a good faith effort to locate the person responsible as cited in former RCW 68.50.160(3)(a) through (e) or the legal representative of the decedent's estate, "the cemetery authority or funeral establishment shall have the right to rely on an authority to bury or cremate the remains, executed by the most responsible party available, and the cemetery authority or funeral establishment may not be held criminally or civilly liable for burying or cremating the human remains." RCW 68.50.160(5).

8

As a preliminary note, we are not deciding the dispute of whether Ms. Whitney or Ms. Cervantes had authority to control the burial of Mr. Wilhalm's body. Instead, the legal issue before this court is whether Ms. Whitney is allowed to proceed with her claim against Mr. Phillips for interfering with her alleged right to control the burial of her uncle's body. We conclude as a matter of law that RCW 68.50.160(5) relieves Mr. Phillips from liability. There is no evidence that would allow reasonable persons to conclude that Mr. Phillips did not conduct a good faith investigation to locate the party responsible for burial or Mr. Wilhalm's personal representative or that Mr. Phillips should not have relied on Ms. Cervantes's authority to bury Mr. Wilhalm.

Evidence presented by Mr. Phillips meets his burden of establishing a good faith investigation and his right to rely on Ms. Cervantes's authority. According to Mr. Phillips's declaration, he identified Ms. Cervantes as Mr. Wilhalm's personal representative. Ms. Cervantes told Mr. Phillips that she was Mr. Wilhalm's personal representative and that she would be in charge of the burial. He stated that he had no reason to question her authority as he knew that she was Mr. Wilhalm's attorney.

To further support his reliance on Ms. Cervantes's authority, Mr. Phillips viewed Mr. Wilhalm's burial instructions that stated that his personal representative was to arrange the burial and interment. Although the form was not valid because it lacked a

9

witness signature, no evidence was presented that Mr. Phillips knew that he should not rely on the instructions. Instead, Mr. Phillips gave the instructions merit because they specifically laid out the burial plans. Finally, Mr. Phillips relied on a letter from the Spokane hospital that released Mr. Wilhalm's body to Mr. Phillips's funeral home. The hospital identified Ms. Cervantes as Mr. Wilhalm's personal representative.

Ms. Whitney failed to present any contrary evidence to create a material issue of fact regarding Mr. Phillips's investigation or his reliance on Ms. Cervantes. While Mr. Phillips did not actively go searching for the information, this does not provide a basis for reasonable persons to conclude that his investigation was not in good faith. The documents Mr. Phillips viewed and his prior knowledge of Ms. Cervantes's relationship with Mr. Wilhalm provided sufficient information for Mr. Phillips to reasonably rely on Ms. Cervantes's authority to control the burial.

Also, Ms. Whitney's conversations with Mr. Phillips regarding her familial relationship to Mr. Wilhalm and her skepticism of Ms. Cervantes's authority do not create an issue of material fact. Although Ms. Whitney told Mr. Phillips that she was Mr. Wilhalm's next of kin, there is no evidence that Ms. Whitney gave Mr. Phillips a reason to believe that she had a legal basis for authority, thus establishing a need for further

investigation. To the contrary, Ms. Cervantes presented Mr. Phillips with documentation that established her authority as the most responsible party available.

The trial court properly dismissed Ms. Whitney's claim of interference with the right to control and direct burial of a family member. Ms. Whitney failed to create an issue of material fact as to whether Mr. Phillips conducted a good faith effort to locate the person cited in former RCW 68.50.160(3) or Mr. Wilhalm's personal representative. As a matter of law, Mr. Phillips cannot be held civilly responsible for relying on Ms. Cervantes's authority when burying Mr. Wilhalm.

*Tortious Interference with a Dead Body.* Ms. Whitney contends that the trial court erred in dismissing her claim for tortious interference with a dead body because a material issue of fact exists as to whether Mr. Phillips's acts were intentional. She maintains that Mr. Phillips acted purposefully when he allowed Ms. Cervantes control over Mr. Wilhalm's body despite Ms. Whitney's objections and without conducting a reasonable investigation. Ms. Whitney claims that this interference caused her to suffer emotional damage.

"The tort of interference with a dead body allows recovery for mental suffering derived from the willful misuse of a body." *Adams*, 164 Wn.2d at 658. "The action is not based on a property interest in the body itself, but rather an interest in the proper

11

treatment of the body." *Id.* The tort action is available for relatives of the deceased and those who control the right to dispose of the body. *Id.*

The mental suffering must directly result from a willful wrong and not merely a negligent act. *Id.* (quoting *Bradbury v. Bleitz*, 133 Wn.2d 134, 136, 233 P. 299 (1925)). For example, intentionally withholding or delaying the proper burial of a body constitutes a willful misuse of the body. *Id.* at 659.

Ms. Whitney failed to present evidence that Mr. Phillips intentionally acted wrongly when he denied Ms. Whitney control over the burial of Mr. Wilhalm's body. There is no evidence that Mr. Phillips knew that Ms. Whitney should have controlled the burial of the body and willfully denied her that right. Mr. Phillips considered the documentation provided to him and allowed Ms. Cervantes to control disposition of Mr. Wilhalm's body. There is no indication Mr. Phillips knew that the documents did not provide Ms. Cervantes with legal authority. Even though Ms. Whitney objected to Ms. Cervantes's control, Mr. Phillips's refusal to give Ms. Whitney control based on her objections is not an intentional wrongful act relating to Mr. Wilhalm's body. In viewing facts and reasonable inferences in the light most favorable to Ms. Whitney, reasonable persons could not reach differing conclusions. The trial court properly dismissed Ms. Whitney's claim for tortious interference with a dead body.

12

*Negligence.* Ms. Whitney contends that the trial court erred in dismissing her negligence claim against Mr. Phillips. She maintains that reasonable persons could find that Mr. Phillips acted negligently when he interfered with Ms. Whitney's right to bury Mr. Wilhalm. We conclude that dismissal was proper. Washington law does not recognize an action for negligent interference with a dead body. *Adams*, 164 Wn.2d at 656-57. Thus, as a matter of law, Ms. Whitney cannot pursue her negligence claim.

In her reply brief, Ms. Whitney asks this court to adopt *Restatement (Second) of Torts* § 868 (1979), which permits recovery for negligent interference with a dead body. Section 868 states in part that one who intentionally, recklessly, or negligently withholds the body of a dead person can be liable to a member of the decedent's family who is entitled to disposition of the body. We will not consider Ms. Whitney's argument for adopting the restatement because she raised the issue for the first time in her reply brief. *See* RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Furthermore, the Washington Supreme Court rejected prior arguments requesting adoption of the restatement. *Adams*, 164 Wn.2d at 657 n.9.

No. 31415-4-III; 31475-8-III
*Whitney v. Cervantes*

We affirm.

_____
Lawrence-Berrey, J.

WE CONCUR:


_____
Brown, J.

_____
Siddoway, C.J.

14