

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Reinterment of
the Remains of Kyril Faenov,

)
)
)
)
)
)

DIVISION ONE

No. 72948-9-I

MARINA BRAUN,

Appellant,

v.

LAUREN SELIG, MARTIN SELIG, and
TEMPLE DE HIRSCH SINAI,

Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

PUBLISHED OPINION

FILED: May 16, 2016

DWYER, J. — Under the General Cemetery Act, chapter 68.50 RCW, the right to control the disposition of human remains, in the absence of evidence of a decedent's expressed wishes regarding the disposition of that person's remains, "vests in" an "order named" that places the decedent's surviving spouse at a higher level of statutory kinship priority than the decedent's surviving parent.[1] When a private request for exhumation of human remains is made, a corollary statute provides that the same kinship hierarchy governs the request.[2]

In this case, in the absence of established testamentary intent, Kyril Faenov's surviving spouse, Lauren Selig, arranged for him to be buried at the

---

[1] RCW 68.50.160(3).
[2] RCW 68.50.200.

Hills of Eternity Cemetery in Seattle. More than two years later, Mr. Faenov's mother, Marina Braun, filed a petition requesting the superior court's permission to exhume Mr. Faenov's remains and reinter them in Portland, Oregon. Ms. Selig opposed Ms. Braun's request. Following a hearing, the superior court denied Ms. Braun's petition on the merits, with prejudice. Given that—absent evidence of a decedent's expressed wishes regarding the disposition of that person's remains—the pertinent statutes do not provide a decedent's parent with the authority to request a court order authorizing the exhumation of the decedent's remains over the objection of a surviving spouse, we affirm the superior court's dismissal of Ms. Braun's petition.

I

Kyril Faenov suffered from mental illness. Throughout his later life, he repeatedly received psychiatric treatment.

On March 25, 2012, Mr. Faenov succumbed to his mental illness, dying by suicide. He was survived by his wife, Lauren Selig, and two young children. Mr. Faenov did not make his desires known with respect to the disposition of his remains upon his death.

On March 29, Ms. Selig arranged for her husband to be buried at the Hills of Eternity Cemetery in Seattle. The Hills of Eternity Cemetery is owned and operated by the Temple De Hirsch Sinai (the Temple). Ms. Selig's father, Martin Selig, paid $13,200 to the Temple to cover costs associated with Mr. Faenov's burial.

More than two years later, on June 26, 2014, Mr. Faenov's mother, Marina

- 2 -

Braun, filed a petition seeking the superior court's permission to exhume her son's remains and reinter them in Portland, Oregon. The Seligs and the Temple were named as adversarial parties.

On August 6, the Seligs filed a joint motion to dismiss Ms. Braun's petition pursuant to CR 12(b)(6). The Temple later joined in the motion. The superior court converted the CR 12(b)(6) motion to a CR 56 summary judgment motion because all parties submitted declarations in support of their contentions.

The superior court was presented with over 600 pages of material. Therein, the parties discussed their beliefs regarding the proper construction of the applicable statutes as well as the merits of Ms. Braun's petition. Ms. Braun presented the superior court with a declaration (in the nature of an amicus brief) wherein her expert witness, an east coast law school professor, offered a legal analysis of the proper construction of chapter 68.50 RCW.

On November 21, the superior court heard oral argument on the motion to dismiss. After hearing the argument of counsel, the superior court granted the motion to dismiss on the merits—dismissing Ms. Braun's petition for exhumation of Mr. Faenov's remains with prejudice.

Ms. Braun now appeals.

II

Title 68 RCW sets forth the law pertaining to "Cemeteries, Morgues, and Human Remains." Within this title, chapter 50 governs "Human Remains." In order to resolve Ms. Braun's appeal, we are called upon to analyze various provisions of this chapter.

"The meaning of a statute is a question of law reviewed de novo." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We review de novo an order of summary judgment, performing the same inquiry as does the trial court. Whitney v. Cervantes, 182 Wn. App. 64, 69, 328 P.3d 957 (2014). Because this case involves mixed questions of law and fact, we review both the meaning of the applicable provisions of chapter 68.50 RCW and the superior court's grant of summary judgment de novo.

"Our primary duty in interpreting a statute is to discern and implement legislative intent." Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011) (citing Campbell & Gwinn, 146 Wn.2d at 9). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. "[U]nder the 'plain meaning' rule, examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found, is appropriate as part of the determination whether a plain meaning can be ascertained." Campbell & Gwinn, 146 Wn.2d at 10. "'It is a fundamental cannon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Sturgeon v. Frost, 577 U.S. ___, 136 S. Ct. 1061, 1070, 194 L. Ed. 2d 108 (2016) (quoting Roberts v. Sea-Land Servs., Inc., 566 U.S. ___, 132 S. Ct. 1350, 1357, 182 L. Ed. 2d 341 (2012)).

"Further, a court must not add words where the legislature has chosen not to include them. A court also must construe statutes such that all of the

language is given effect, and 'no portion [is] rendered meaningless or superfluous.'" Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003) (alteration in original) (internal quotation marks omitted) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Campbell & Gwinn, 146 Wn.2d at 12.

"The entire sequence of statutes enacted by the same legislative authority, relating to the same subject matter, should be considered in placing a judicial construction upon any one of the acts." In re Marriage of Little, 96 Wn.2d 183, 189, 634 P.2d 498 (1981). In doing so, we presume that the legislature is aware of its past legislation and any judicial interpretations thereof. Little, 96 Wn.2d at 189-90.

RCW 68.50.110 sets forth the law governing burial or cremation of human remains, stating that,

> [e]xcept in cases of dissection provided for in RCW 68.50.100, and where human remains shall rightfully be carried through or removed from the state for the purpose of burial elsewhere, *human remains lying within this state, and the remains of any dissected body, after dissection, shall be decently buried, or cremated within a reasonable time after death.*

(Emphasis added.)

To aid in effectuating section .110's dictate to bury or cremate human remains "within a reasonable time after death," the right to control the disposition of human remains, the liability of a funeral establishment or cemetery authority

when effectuating the disposition, and the liability for the cost of disposition of human remains is set forth in RCW 68.50.160.

(1) A person has the right to control the disposition of his or her own remains without the predeath or postdeath consent of another person. A valid written document expressing the decedent's wishes regarding the place or method of disposition of his or her remains, signed by the decedent in the presence of a witness, is sufficient legal authorization for the procedures to be accomplished.

(2) Prearrangements that are prepaid, or filed with a licensed funeral establishment or cemetery authority, under RCW 18.39.280 through 18.39.345 and chapter 68.46 RCW are not subject to cancellation or substantial revision by survivors. Absent actual knowledge of contrary legal authorization under this section, a licensed funeral establishment or cemetery authority shall not be held criminally nor civilly liable for acting upon such prearrangements.

(3) If the decedent has not made a prearrangement as set forth in subsection (2) of this section or the costs of executing the decedent's wishes regarding the disposition of the decedent's remains exceeds a reasonable amount *or directions have not been given by the decedent, the right to control the disposition of the remains of a deceased person vests in, and the duty of disposition and the liability for the reasonable cost of preparation, care, and disposition of such remains devolves upon the following in the order named*:

(a) The person designated by the decedent as authorized to direct disposition as listed on the decedent's United States department of defense record of emergency data, DD form 93, or its successor form, if the decedent died while serving in military service as described in 10 U.S.C. Sec. 1481(a) (1)-(8) in any branch of the United States armed forces, United States reserve forces, or national guard;

(b) The designated agent of the decedent as directed through a written document signed and dated by the decedent in the presence of a witness. The direction of the designated agent is sufficient to direct the type, place, and method of disposition;

(c) *The surviving spouse* or state registered domestic partner;

(d) The majority of the surviving adult children of the decedent;

(e) *The surviving parents of the decedent;*

(f) The majority of the surviving siblings of the decedent;

(g) A court-appointed guardian for the person at the time of the person's death.

(4) If any person to whom the right of control has vested pursuant to subsection (3) of this section has been arrested or charged with first or second degree murder or first degree manslaughter in connection with the decedent's death, the right of control is relinquished and passed on in accordance with subsection (3) of this section.

(5) If a cemetery authority as defined in RCW 68.04.190 or a funeral establishment licensed under chapter 18.39 RCW has made a good faith effort to locate the person cited in subsection (3)(a) through (g) of this section or the legal representative of the decedent's estate, the cemetery authority or funeral establishment shall have the right to rely on an authority to bury or cremate the human remains, executed by the most responsible party available, and the cemetery authority or funeral establishment may not be held criminally or civilly liable for burying or cremating the human remains. In the event any government agency or charitable organization provides the funds for the disposition of any human remains, the cemetery authority or funeral establishment may not be held criminally or civilly liable for cremating the human remains.

(6) The liability for the reasonable cost of preparation, care, and disposition devolves jointly and severally upon all kin of the decedent in the same degree of kindred, in the order listed in subsection (3) of this section, and upon the estate of the decedent.

(Emphasis added.)

RCW 68.50.200 sets forth the law governing the authority to disinter human remains when made upon a private request.

Human remains may be removed from a plot in a cemetery with the consent of the cemetery authority and the written consent of one of the following in the order named:

(1) *The surviving spouse* or state registered domestic partner.

(2) The surviving children of the decedent.

(3) *The surviving parents of the decedent.*

(4) The surviving brothers or sisters of the decedent.

If the required consent cannot be obtained, permission by the superior court of the county where the cemetery is situated is sufficient: PROVIDED, That the permission shall not violate the terms of a written contract or the rules and regulations of the cemetery authority.

(Emphasis added.)

RCW 68.50.210 sets forth the requirement of notice when permission to disinter human remains is sought by application to the court.

Notice of application to the court for such permission shall be given, at least ten days prior thereto, personally, or at least fifteen days prior thereto if by mail, to the cemetery authority *and to the persons not consenting,* and to every other person on whom service of notice may be required by the court.

(Emphasis added.)

RCW 68.50.220 sets forth the circumstances in which RCW 68.50.200 and 68.50.210 are inapplicable.

RCW 68.50.200 and 68.50.210 do not apply to or prohibit the removal of any human remains from one plot to another in the same cemetery or the removal of [human] remains by a cemetery authority from a plot for which the purchase price is past due and unpaid, to some other suitable place; *nor do they apply to the disinterment of human remains upon order of court or coroner.*

- 8 -

> However, a cemetery authority shall provide notification to the person cited in RCW 68.50.200 before moving human remains.

(Emphasis added.)

Careful analysis of these provisions is required. The language of subsection .160(1) establishes that "[a] person has the right to control the disposition of his or her own remains without the predeath or postdeath consent of another person." In the absence of such an expression of intent, subsection .160(3) grants "the right to control the disposition of the remains of a deceased person" to a person or group of persons designated therein. This right "vests in" such a person or persons in an enumerated "order named" that places a surviving spouse at a higher level of statutory kinship priority than a surviving parent. In order to determine the extent of an individual's right of control within the statutory kinship hierarchy, an examination of the meaning of "vest" is necessary.

We begin by resorting to a standard, often-referenced dictionary. Webster's Third New International Dictionary provides, in pertinent part, that "vest" means:

> **1 a :** to place or give into the possession or discretion of some person or authority <the regulation of the waterways . . . was ~ ed in the corporation — Edwin Benson>; *esp* : to give to a person a legally fixed immediate right of present or future enjoyment of (as an estate) <a deed that ~ s a life estate in the grantee and a remainder in his children> **b :** to grant, endow, or clothe with a particular authority, right, or property <~ a court with the right to try criminal cases> <the retirement plan ~ ed the workers absolutely with the company's contribution after 10 years of continuous employment>. . .**3 :** to lay out (money) : INVEST ~ *vi* **1 :** to become legally vested <normally title to real property ~s in the holder of a properly executed deed>. . .

- 9 -

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2547 (2002).[3]

As evidenced, "vest" is used in a variety of related ways in common parlance. Thus, "vest" means, in one respect, "to place or give into the possession or discretion of some person or authority." This is a right of a particular type: "a legally fixed immediate right of present or future enjoyment." Stated differently, the authoritative and discretionary power of the word is conveyed by the definition, "to grant, endow, or clothe with a particular authority, right, or property." To state that "vest" means "to become legally vested," although somewhat circular, is consistent. These various definitions establish that the focus of the word "vest" is on the discretion given to a person or group of persons to make a decision respecting a "particular authority, right, or property." Further, the right granted is immediate, legally enforceable, and pertains to "present or future enjoyment." In this way, the right to control burial circumstances that "vests" under subsection .160(3) is a perpetual right.

As a condition of exercising this vested right, subsections .160(3) and (6), respectively, require that the designated person or group of persons assume "the

---

[3] Our analysis requires us to consider the meaning of several definitions. The lexicographic notes to Webster's Third New International Dictionary sets forth the manner in which we should consider these definitions, providing:

> The system of separating by numbers and letters reflects something of the semantic relationship between various senses of a word. It is only a lexical convenience. It does not evaluate senses or establish an enduring hierarchy of importance among them. The best sense is the one that most aptly fits the context of an actual genuine utterance.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 17(a) (note 12.4) (2002). We have previously recognized the significance of this lexicographic note. See State v. Rodriquez, 187 Wn. App. 922, 933, 352 P.3d 200 (2015).

duty of disposition and the liability for the reasonable cost of preparation, care, and disposition of such remains," and that "liability for the reasonable cost of preparation, care, and disposition devolves jointly and severally upon all kin of the decedent in the same degree of kindred, *in the order listed in subsection (3)* of this section, and upon the estate of the decedent." (Emphasis added.)

These assignments of financial responsibility for the decisions made well indicates that the legislature intended both the right to decide and the financial responsibilities attendant thereto to be effective and meaningful for more than one day.[4] This reading is strengthened by the fact that, when a request for a private exhumation is made, section .200 does not provide a method for reimbursing the money previously paid pursuant to the subsections .160(3) and (6) mandates. Thus, requiring payment of expenses as a condition of exercising the subsection .160(3) vested right can be seen as evidencing the legislature's intent that the grant of authority set forth in subsection .160(3) was a grant of perpetual control.

Our analysis also requires further examination of section .200, governing the exhumation of human remains. That provision allows for the private exhumation of human remains when there is "the consent of the cemetery authority and the written consent of one of the following in the order named." The "order named" in section .200 is the same statutory kinship hierarchy as is set forth in subsection .160(3). This kinship hierarchy again places a surviving

---

[4] As will be later discussed, Ms. Braun's appellate argument rests upon the assertion that the right bestowed by subsection .160(3) terminates upon burial.

- 11 -

spouse at a higher level of statutory priority than a surviving parent. Accordingly, a person or group of persons seeking the exhumation of human remains must obtain consent from the decedent's surviving kin "in the order named." If that consent is not forthcoming, the exhumation cannot proceed.

The language of the last sentence of section .200 does not alter our conclusion. That sentence begins, "[i]f the required consent cannot be obtained, permission by the superior court of the county where the cemetery is situated is sufficient." Consistent with the kinship hierarchies set forth in subsection .160(3) and section .200, we take this language to recognize that all kin are mortal and that, at some point, none of the referenced kin will still survive. This provision accounts for that possibility.

The statutory notice provision, RCW 68.50.210, also bears mention. That section provides that when a private request to exhume human remains is made pursuant to section .200, notice of the application to the superior court must be provided "to the cemetery authority and to the persons not consenting." This provision accounts for the obvious—a decedent may be survived by multiple parents, multiple children, and multiple siblings. Thus, at each level of the statutory kinship hierarchy, one kin may disagree with a decision made by other kin at the same level of priority. In that case, the dissenting kin must be afforded notice of the court proceeding. Nothing in this provision allows for a rearrangement or disregard of the statutory kinship hierarchy.

Case law is consistent. We previously addressed whether a mother could exhume her son's cremated remains over the objection of his father when the

parents had reached and acted upon a prior agreement regarding the disposition of his remains. Woods v. Woods, 48 Wn. App. 767, 740 P.2d 379 (1987). To answer this question, we looked to the statutory kinship hierarchy, observing that "[a]s there was no surviving spouse or children, the parents are by this statute entitled to possession of the cremated remains." Woods, 48 Wn. App. at 769. After noting that each parent had the same statutory right as the other and that they had, pursuant to this authority, reached an accord, we held that, "[t]here is no rule of law that this agreement can be unilaterally rescinded" and that neither could void the agreement against the wish of the other. Woods, 48 Wn. App. at 769. This case well illustrates the need for the section .210 notice requirements, as we have interpreted them herein.

We next review section .220, providing, in part, that sections .200 and .210 do not "apply to the disinterment of human remains upon order of court or coroner." To properly understand this directive, it must be read in conjunction with the initial section of chapter 68.50 RCW, which sets forth the circumstances in which a coroner retains authority over human remains.

> The jurisdiction of bodies of all deceased persons who come to their death suddenly when in apparent good health without medical attendance within the thirty-six hours preceding death; or where the circumstances of death indicate death was caused by unnatural or unlawful means; or where death occurs under suspicious circumstances; or where a coroner's autopsy or postmortem or coroner's inquest is to be held; or where death results from unknown or obscure causes, or where death occurs within one year following an accident; or where the death is caused by any violence whatsoever, or where death results from a known or suspected abortion; whether self-induced or otherwise; where death apparently results from drowning, hanging, burns, electrocution, gunshot wounds, stabs or cuts, lightning, starvation, radiation,

exposure, alcoholism, narcotics or other addictions, tetanus, strangulations, suffocation or smothering; or where death is due to premature birth or still birth; or where death is due to a violent contagious disease or suspected contagious disease which may be a public health hazard; or where death results from alleged rape, carnal knowledge or sodomy, where death occurs in a jail or prison; where a body is found dead or is not claimed by relatives or friends, is hereby vested in the county coroner, which bodies may be removed and placed in the morgue under such rules as are adopted by the coroner with the approval of the county commissioners, having jurisdiction, providing therein how the bodies shall be brought to and cared for at the morgue and held for the proper identification where necessary.

RCW 68.50.010.

In stating that a coroner retains jurisdiction over human remains when death occurs by "unnatural or unlawful means," "suspicious circumstances," or "unknown or obscure causes," this provision is replete with references to criminality, unclear causes of death, threats to the public health, and a coroner's investigative function. When section .220's directive that section .200 does not apply to exhumations that are made "upon order of court or coroner" is read in light of section .010, it becomes evident that section .220's directive is referencing the involvement of a court or coroner in the investigation of an individual's cause of death, potential criminality, or a threat to the public health.

Scholarly opinion supports this view. In a treatise referenced by Ms. Braun's expert witness the two prevailing reasons for allowing exhumations at common law are discussed.

There are two principal grounds for permitting exhumation, the one in the public interest (though the particular reason may be private) and the other for purely private purposes. The first class of cases are usually the subject of statutory law, and include cases of exhumation for purposes of ascertaining causes of death to permit

criminal prosecution. The second class of cases are those where survivors desire to remove the interred body of a relative to some other resting place.

PERCIVAL E. JACKSON, THE LAW OF CADAVERS AND OF BURIAL AND BURIAL PLACES 107 (2d ed. 1950). As further explained in the treatise, at common law:

Though exhumation of a body once permanently buried is abhorrent to custom, sentiment, and the law, every disinterment is not a desecration of the grave in the eyes of the law. While only "circumstances of extreme exigency" and no light reasons will suffice to justify disinterment, reasons of public policy dictate legislative enactments authorizing exhumation and equity "courts have never hesitated to have a body exhumed when the application under the particular circumstances appeared reasonable and was for the purpose of eliciting the truth in the promotion of justice."

JACKSON, supra, at 106 (footnotes omitted).

These aspects of the common law are present in Washington's statutory scheme. Sections .200 and .210 pertain to exhumation requests for purely private purposes. Section .220, on the other hand, regulates exhumations "for the purpose of eliciting the truth in the promotion of justice." JACKSON, supra, at 106. Such disinterment requests, made for public purposes, and subject to the authority of either a court or a coroner, are the object of section .220.

The comments in the treatise are pertinent to yet another aspect of our analysis. As the latter quoted passage makes clear, there was a strong common law presumption in favor of repose. Thus did the treatise characterize "exhumation of a body once permanently buried [as] abhorrent to custom, sentiment, and the law." JACKSON, supra, at 106. This presumption in favor of repose is consistent with our conclusion that

- 15 -

the statutory kinship hierarchy set forth in subsection .160(3) grants a perpetual right that is recognized in section .200.

Having set forth our reading of chapter 68.50 RCW, we now turn to the particulars of this case. Because Mr. Faenov did not make his intent known, subsection .160(3) granted Ms. Selig, his surviving spouse, the right to control the disposition of his remains. Consistent with this statutory grant, Ms. Selig's father (on her behalf) paid the Temple $13,200 to facilitate Mr. Faenov's burial at the Hills of Eternity Cemetery. More than two years later, when Mr. Faenov's mother requested permission to exhume his remains, the surviving spouse refused to consent. Given this context, and in light of our reading of the applicable statutory provisions, the kinship hierarchy set forth in section .200 gave Ms. Selig continued statutory priority and her refusal to consent to the exhumation request foreclosed Ms. Braun's petition.

III

Notwithstanding the clarity of the foregoing analysis, Ms. Braun asserts a reading of chapter 68.50 RCW that, she avers, mandates a contrary result.

As a basic premise of her argument, Ms. Braun insisted to the superior court (and continues to assert on appeal) that chapter 68.50 RCW does not alter the superior court's unrestrained common law equitable discretion. Thus, her argument goes, a decision regarding whether to permit exhumation of human remains continues to be a purely equitable one and all parties start on an equal

footing in urging their view of the equities.[5] We disagree.

At common law, "the right to bury a corpse and to preserve its remains, is a legal right, which the courts will recognize and protect." Herzl Congregation v. Robinson, 142 Wash. 469, 473, 253 P. 654 (1927). "[T]he right to protect the remains includes the right to preserve them by separate burial, to select the place of sepulture, and to change it at pleasure." Herzl, 142 Wash. at 473. The courts recognized that "a person can make testamentary disposition of his remains if considerations of propriety and decency do not intervene, it has been declared that, when otherwise doubtful, the chancellor should give heed to the wishes of the deceased if they can be ascertained." Wood v. E.R. Butterworth & Sons, 65 Wash. 344, 348, 118 P. 212 (1911).

"[I]n the absence of testamentary disposition, [the right] belong[ed] exclusively to the next of kin." Herzl, 142 Wash. at 473. Indeed, "[t]he right of the next of kin to control and direct the burial of a corpse and arrange for its preservation [was] not only a natural right, embracing a high order of sentiment, but [had come] to be well recognized as a legal right." Guilliume v. McCulloch, 173 Wash. 694, 696, 24 P.2d 93 (1933). In this regard, the court acknowledged that "there [was] a *quasi* property right in a dead human body inherent in the immediate relatives of the deceased." Herzl, 142 Wash. at 472.

---

[5] Thus it is that Ms. Braun necessarily contends that the applicable kinship priority granted by subsection .160(3) expires upon burial. Her construction of the statutes necessarily means that if, on Day 1, the decedent is buried pursuant to the wishes of the surviving spouse and, on Day 2, a surviving parent petitions for disinterment, the surviving spouse's choice is entitled to no judicial deference in ruling upon the petition.

- 17 -

"If a dispute ar[ose] about it among relatives . . . it must be determined by principles of equity and such considerations of propriety and justice as ar[ose] out of the particular circumstances of the case. No general rule to be applied absolutely in all cases c[ould] be laid down upon the subject, for what [was] fit and proper to be done in each case must depend upon the special circumstances of that case. It [was] a jurisdiction which belong[ed] to equity, and the chancellor w[ould] exercise it with great care, having regard to what [was] due to the natural feelings and sensibilities of individuals, as well as to what [was] required by considerations of public propriety and decency."

Wood, 65 Wash. at 347-48 (quoting Fox v. Gordon, 16 Phila. Rep. 185, 186-87, 40 Legal Intel. 374 (Pa. Ct. Com. Pl. (1883)).

In support of her contention that these common law principles remain the controlling law in Washington—notwithstanding the enactment of the various provisions in chapter 68.50 RCW—Ms. Braun cites to Wood v. E.R. Butterworth & Sons, 65 Wash. 344. In that case, the court addressed whether a widow could have her husband's remains interred in Seattle (as she preferred) rather than South Dakota (as his children preferred). Wood, 65 Wash. at 346-47. The children presented abundant evidence that, at various times during his life, the decedent had expressed his desire to be buried in South Dakota. In determining whose wishes should prevail, the court announced that "'[i]t has always been, and will ever continue to be, the duty of courts to see to it that the expressed wish of one, as to his final resting place, shall, so far as possible, be carried out.'" Wood, 65 Wash. at 348 (quoting Thompson v. Deeds, 93 Iowa 228, 61 N.W. 842 (1895)). Hence, the court held that "the will of the deceased, when coupled with his relation to the state of South Dakota, shall have control over the desire of the widow that the remains of her husband be interred near her, but far from the

- 18 -

place he called home." Wood, 65 Wash. at 349. By refusing to permit the burial of Wood's remains in a manner that was against his expressed will, the court honored the decedent's wishes. The children prevailed because they advanced their father's wishes, not their own. Thus, contrary to Ms. Braun's view of the case, the focus of the decision was on upholding the expressed wishes of the decedent, not on weighing the equities involved in a dispute between a surviving spouse and surviving children over the interment of the decedent's remains.[6] The provisions of chapter 68.50 similarly place the decedent's wishes at the highest level of priority.

Moreover, Ms. Braun's resort to the common law is incomplete. The Wood case dealt with burial, not exhumation. Once burial was accomplished, a different common law principle applied: "The courts as a rule will not allow disinterment against the will of those who have the right to object." JACKSON, supra, at 115. Thus does the treatise cited by Ms. Braun's expert witness support Ms. Selig in this dispute.

In addition to Ms. Braun's misplaced reliance on Wood, case law demonstrates that—contrary to the underlying premise of Ms. Braun's arguments on appeal—the legislature altered the common law in creating the statutory kinship hierarchy.

---

[6] In support of her argument that the superior court herein retained unrestricted equitable discretion to order exhumation, Ms. Braun also cites to Bellevue Masonic Temple, Inc., v. Lokken, 75 Wn.2d 537, 452 P.2d 544 (1969). Her reliance is misplaced.

In Lokken, the cemetery authority found it necessary to exhume all of the remains located in a "Pioneer Cemetery" that had never been formally dedicated as such and reinter them in a dedicated cemetery. The court approved a process by which the exhumations were to take place. Contrary to Ms. Braun's assertion, the case does not concern the court's power to order the act of disinterment. Nothing in the opinion is helpful to resolving the case at hand.

No. 72948-9-I/20

As discussed in section II, supra, in Woods v. Woods, 48 Wn. App 767,

we addressed whether a mother could exhume her son's cremated remains over

the objection of his father when the parents had reached and acted upon a prior

agreement regarding the disposition of his remains.  Our answer relied on the

statutory kinship hierarchy of subsection .160(3), rather than on common law

principles.

> More recently, in Whitney v. Cervantes, Division Three of this court stated:
>
> > While the right to control disposition of a body arose out of common law, it is now codified by statute in RCW 68.50.160.[7]  A person has the right to control the disposition of his or her own remains.  RCW 68.50.160(1).  To execute this right, "[a] valid written document expressing the decedent's wishes regarding the place or method of disposition of his or her remains, signed by the decedent in the presence of a witness, is sufficient legal authorization for the procedures to be accomplished."  RCW 68.50.160(1).
> > However, if the decedent has not given directions or made prearrangements with a funeral establishment, the right to control disposition of the remains vests to the persons in the following order: (a) the surviving spouse, (b) the surviving adult children of the decedent, (c) the surviving parents of the decedent, (d) the surviving siblings of the decedent, and (e) [the] person acting as a representative of the decedent under the signed authorization of the decedent.  Former RCW 68.50.160(3) (2010).

182 Wn. App. at 70-71.

Both Wood and Whitney recognized the importance of the statutory

kinship hierarchy.  In creating this hierarchy, the legislature took it upon itself to

designate "winners" and "losers" among kin, obviously hoping to decrease future

discord and enhance consistency of result.  By creating the hierarchy in

---

[7] "The Washington Supreme Court in Herzl noted that the right of custody over a dead body and disposal of the body has been recognized by Washington statute.  Herzl, 142 Wash. at 471."  (Footnote in original.)

- 20 -

subsection .160(3) and maintaining it in section .200, the legislature modified the common law. It so doing, it supplanted the earlier general right of the next of kin to, in the absence of testamentary intent, resort to equity in an attempt to control and direct a decedent's burial, putting in its place the clearer, more specific, statutory kinship hierarchy. Thus, a general equitable common law cause of action for exhumation did not survive the legislature's enactment of the provisions now codified as chapter 68.50 RCW. Those provisions establish and control such requests for judicial relief.

Because the creation of the statutory kinship hierarchy of subsection .160(3) and section .200 modified the common law, and given that these provisions place Mr. Faenov's surviving spouse at a higher level of statutory priority than Mr. Faenov's mother, the superior court correctly dismissed Ms. Braun's petition for exhumation of Mr. Faenov's remains.

IV

Ms. Braun next asserts that chapter 68.50 RCW does not control the resolution of this dispute because RCW 68.50.220 dictates that RCW 68.50.200 is inapplicable when exhumation is made "upon order of court." Again, we disagree.

This argument fails for two reasons. First, the argument fails as a matter of statutory construction. Taken to its logical conclusion, the argument postulates that the language of section .220 mandates that section .200 does not apply to itself (because it creates a cause of action that would result in a court order). This is an absurd construction, which is forbidden. Second, Ms. Braun's

- 21 -

proposed construction is at variance with our construction of section .220 as applying only to "public" exhumation requests. Her request is a purely private one.

A

First, Ms. Braun's argument that the provisions of section .200 do not apply when exhumation is allowed "upon order of court" fails as a matter of statutory construction.

Primarily, the claim fails because it ignores the complete text. While the argument cherry-picks the words "upon order of court" from section .220, the full phrase is "upon order of court or coroner." Ms. Braun's reading is not a plain reading of the statute.

It is a well-settled rule of statutory interpretation that a court must avoid a construction of a statute that results in "unlikely, strained, or absurd consequences," because we presume that the legislature did not intend an absurd result. In re Estate of Garwood, 109 Wn. App. 811, 814-15, 38 P.3d 362 (2002); J.P., 149 Wn.2d at 450; State v. Neher, 112 Wn.2d 347, 351, 771 P.2d 330 (1989); Alderwood Water Dist. v. Pope & Talbot, Inc., 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

Section .200 creates a private cause of action to seek exhumation from the court "[i]f the required consent cannot be obtained." Because section .200 allows an individual to request an order authorizing exhumation from the court, Ms. Braun's argument that the provisions of section .220 do not apply when exhumation is made "upon order of court" is, in fact, a contention that section

.200 does not apply to itself. This cannot be. The legislature enacted both section .200 and section .220. In so doing, the legislative intent cannot have been to create a cause of action in one provision and immediately repeal the same cause of action in a following provision. Ms. Braun's contention fails because it leads to an absurd result.

B

Second, in asserting that the provisions of section .200 do not apply when exhumation is made "upon order of court," Ms. Braun fails to quote the entire provision and, as a result, she does violence to the reference in section .220 to the role of the court or coroner.

The provision actually declares, in pertinent part, that section .200 does not apply "to the disinterment of human remains upon order of court *or coroner.*" RCW 68.50.220 (emphasis added).

As explained in section II, <u>supra</u>, the legislature was making clear in section .220 that the statutory cause of action created in section .200 did not apply in certain, traditional circumstances. These circumstances, concerning the role of the court or coroner, are those arising from an investigation into an individual's cause of death, potential criminality, or a threat to the public health. These have historically been referred to as "public" purposes. Because Ms. Braun's request for exhumation is not made for a public purpose, sections .200 and .210 govern her private request. Pursuant to subsection .160(3) and section .200, Ms. Selig, Mr. Faenov's surviving spouse, enjoys statutory priority. Accordingly, the superior court correctly dismissed Ms. Braun's petition.

V

Finally, Ms. Braun contends that section .210's dictate that notice of the court proceedings be given to "the persons not consenting" anticipates that a petitioner may apply to the superior court for permission to exhume a decedent's remains even when a person possessing a higher degree of statutory kinship priority refuses to grant such permission. Again, we disagree.

As set forth in section II, supra, the requirement of notice in section .210 references dissenters at the same level of statutory kinship priority as the petitioner(s). Given that Ms. Selig enjoys an unshared statutory priority, her wishes control. Thus, there are no "persons not consenting" who are entitled to notice pursuant to section .210. Again, there was no error in the superior court's dismissal of Ms. Braun's petition.[8]

Affirmed.

We concur:

---

[8] Given our resolution of this matter, we need not reach any of the other contentions raised in the parties' briefing.